# IN THE COURT OF APPEALS OF IOWA

No. 21-0938
Filed April 13, 2022

**STATE OF IOWA,**
Plaintiff-Appellee,

**v.**

**BRADY MURPHY,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cass County, Margaret Reyes, Judge.

A defendant appeals the denial of his motion to suppress evidence based on the allegedly unlawful stop of his vehicle. **REVERSED AND REMANDED.**

Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

When does crossing a traffic line cross the line into reasonable suspicion that criminal activity is afoot?  Brady Murphy was pulled over after crossing the right fog line once while driving down a two-lane divided highway at night.  He was arrested for operating while intoxicated.  Murphy unsuccessfully sought to suppress all evidence derived from the traffic stop, arguing that under *State v. Tague*, 676 N.W.2d 1977, 204 (Iowa 2004), "a single, isolated movement over a fog line" does not give rise to a reasonable suspicion for an investigatory stop.  After objectively reviewing the totality of the circumstances, we agree and reverse and remand for further proceedings.

## I.     *Background Facts and Proceedings*

Shortly before midnight on February 27, 2021, a sheriff's deputy was travelling south on a two-lane divided highway in rural Iowa when he saw an oncoming pickup truck driven by Murphy approaching in the northbound lane.  According to the deputy's arrest report, which was attached to the minutes of evidence, the truck's "passenger side tires crossed the fog line and went onto the shoulder of the road."  Wanting to investigate further, the deputy made a U-turn and followed the truck.  By the time the deputy activated his emergency lights to initiate a traffic stop, the truck had entered a residential area.  After pulling into a driveway, Murphy exited the truck to talk to the deputy.  Murphy acknowledged that he had crossed the fog line as he passed the deputy on the highway.

While talking to him, the deputy discovered an open beer can in the center cup holder of Murphy's truck and observed signs of intoxication in Murphy.  He asked Murphy to perform field sobriety tests, which Murphy failed.  A preliminary

breath test showed intoxication over the legal limit, and Murphy was arrested for operating while intoxicated. After arriving at the county jail, Murphy provided a chemical breath sample that registered an alcohol concentration of 0.141.

The State filed a criminal complaint against Murphy for operating while intoxicated, first offense under Iowa Code section 321J.2(2)(A) (2021). Murphy moved to suppress all evidence derived from the traffic stop, arguing the deputy did not have probable cause or reasonable suspicion to stop his vehicle, thereby violating his rights under the United States and Iowa Constitutions.

At the suppression hearing, when asked by the State to describe what he observed of Murphy's vehicle, the deputy testified: "I noticed that vehicle leave the road with its passenger side tires. . . . He was off on the shoulder, then back on the road. It wasn't sustained." He was unable to estimate how far off the road Murphy's vehicle traveled. But on cross-examination, the deputy said that Murphy's truck "left the road significantly" after crossing the right fog line and that it was "back on the road" in what he described as "a pretty sudden movement." The deputy testified that he initiated the traffic stop because he had previously dealt with impaired or intoxicated drivers, as well as those who had "drifted off the road" due to tiredness or medical issues, so he wanted "to see what this particular issue was."

After reviewing the deputy's testimony and dashboard camera footage of the roadway encounter, the district court denied Murphy's motion to suppress. The court reasoned:

> When looking at the totality of the circumstances surrounding this traffic stop, the court finds that [the deputy] had grounds for an investigatory stop. It was nearly midnight on a dark two-lane highway

when the deputy witnessed [Murphy's] vehicle veer off the roadway onto the gravel shoulder where it straddled the fog-line as the two vehicles met and passed each other. The court finds these facts to be distinguishable from those set out in *Tague* where the defendant "just barely" crossed the left lane line before immediately returning to his traffic lane.

Following this adverse ruling, Murphy stipulated to a trial on the minutes and was found guilty by the district court. Murphy now appeals the suppression ruling on the narrow issue of whether the deputy had reasonable suspicion to initiate an investigatory stop.

## II.    Analysis

Murphy argues the district court erred in finding his case distinguishable from *Tague*, 676 N.W.2d at 204, which held that an officer who observed a driver "crossing the edge line for a brief moment" did not have reasonable suspicion to stop the vehicle for investigatory purposes. The court in *Tague* reasoned that "any vehicle could be subject to an isolated incident of briefly crossing an edge line of a divided roadway without giving rise to the suspicion of intoxication or fatigue." 607 N.W.2d at 205. Central to the court's reasoning was that "[t]here was no testimony as to any factors, which would support a reasonable suspicion," that the defendant was driving under the influence such as weaving, veering between lanes, or erratic speed changes. *Id.* at 204–05 (distinguishing cases in which reasonable suspicion existed because defendant was driving erratically in general, in addition to crossing lane lines). Murphy urges us to follow *Tague*, the facts of which he asserts are "almost identical to the case at bar," to conclude that his one-time act of crossing the fog line did not give rise to reasonable suspicion for a traffic stop.

"A traffic stop is unquestionably a seizure." *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013); *accord Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Because Murphy's challenge is based on the prohibition against unreasonable seizures under both article I, section 8 of the Iowa Constitution and the Fourth Amendment to the United States Constitution,[1] we review the denial of his motion to suppress de novo. *See State v. Struve*, 956 N.W.2d 90, 95 (Iowa 2021). In exercising de novo review, we independently evaluate the totality of the circumstances as shown by the record and defer to the district court's fact findings, although we are not bound by them. *Id.*

As mentioned, the fighting issue in this appeal is whether there was reasonable suspicion for the deputy to stop Murphy's vehicle.[2] A traffic stop may be conducted for investigative purposes but is only reasonable "when articulable facts and all the circumstances confronting the officer at the time give rise to a reasonable belief that criminal activity may be afoot." *McIver*, 858 N.W.2d at 702. Thus, the totality of the circumstances must be considered when determining whether reasonable suspicion existed to initiate the stop in the first place. *Id.* The

---

[1] In the absence of argument to the contrary, we will apply the United States and Iowa constitutional provisions in the same manner. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015).

[2] The State raises an alternative argument that the traffic stop was supported by probable cause because the deputy witnessed Murphy violate Iowa Code section 321.306(1), which requires a vehicle traveling on a divided highway with three or more lanes to "be driven as nearly as practical entirely within a single lane." We agree with Murphy that the State cannot raise this argument for the first time on appeal. *See State v. Steffens*, 889 N.W.2d 691, 697 (Iowa Ct. App. 2016) (finding the State did not preserve its reasonable-suspicion argument where that argument was not raised before or addressed by the district court). But even if we were to entertain it, the statute plainly does not apply here because the roadway at issue is divided into two lanes, not "three or more." *See* Iowa Code § 321.306(1).

State bears the burden of proving by a preponderance of the evidence that the officer had reasonable suspicion to initiate the stop. *Tague*, 676 N.W.2d at 204. "If the State does not meet this burden, the evidence obtained through the stop must be suppressed." *State v. Louwrens*, 792 N.W.2d 649, 651–52 (Iowa 2010). Reasonable suspicion is "more than a hunch, suspicion, or gut feeling." *State v. Gallardo*, No. 14-0350, 2015 WL 5278948, at *3 (Iowa Ct. App. Sept. 10, 2015) (per curiam); *accord Tague*, 676 N.W.2d at 204.

In distinguishing *Tague*, the district court noted that Murphy's truck "remained on the shoulder straddling the fog line more than just briefly before returning to the roadway." *Cf.* 676 N.W.2d at 203 (highlighting the fact that defendant's vehicle had "just barely crossed the left edge line for a brief period"). Plus, the court credited the deputy's testimony that Murphy's movement back onto the road was "sudden." While these are relevant circumstances to be considered in the totality-of-the-circumstances analysis, we do not agree with the court's conclusion that they gave rise to reasonable suspicion that criminal activity was afoot. *See McIver*, 858 N.W.2d at 703.

Even if the movement of crossing the fog line itself was arguably more dramatic here than that in *Tague*, the bottom line is that there was no testimony or other evidence presented as to any other factors that would support a reasonable suspicion of Murphy's intoxication beyond that single act. *See* 676 N.W.2d at 205. The *Tague* court made clear that "*an isolated incident* of briefly crossing an edge line of a divided roadway" is insufficient on its own to justify a stop based on the driver's suspected intoxication or fatigue. *Id.* at 205 (emphasis added). In cases in which reasonable suspicion was found in the traffic-stop context, the court in

*Tague* specifically noted there was evidence of excessive speeding, swerving, repeated lane crossings, and otherwise erratic driving so as to give rise to a reasonable belief that the driver was impaired. *See id.* Those other factors are not present here.

Perhaps the closest case to the facts presented here is *State v. Fielder*, No. 10-0289, 2010 WL 4485898, at *1 (Iowa Ct. App. Nov. 10, 2010), which is cited and distinguished by Murphy in his appellate brief. In that case, the officer was patrolling at around 10:30 p.m. on the Fourth of July when he observed Fielder's vehicle pass in front of him and make "two sudden movements off onto the shoulder" of the highway within a matter of seconds. *Fielder*, 2010 WL 4485898, at *1. As the officer followed Fielder's vehicle, he again saw Fielder's tires touch the fog line for a couple of seconds. *Id.* The officer reported that all three instances occurred within a one-half mile distance. *Id.* Based on those circumstances, this court concluded that the traffic stop initiated by the officer was supported by reasonable suspicion. *Id.* at *2. We reasoned that, although there was not "overwhelming evidence," the erratic driving when coupled with the Fourth of July holiday, which is often "associate[d] with alcohol consumption and late-night driving," was sufficient to give rise to a reasonable belief that Fielder was driving while intoxicated. *Id.*

Unlike in *Fielder*, the deputy here acknowledged that what he observed was a single, isolated movement over the fog line. He did not otherwise testify that Murphy was weaving, driving erratically, or speeding. At most, the deputy described Murphy's movement over the fog line and back onto the road as "pretty sudden." He also testified Murphy's truck "left the road significantly." But the dash-

cam video recording does not support the deputy's descriptions. *See State v. Tangara*, No. 09-0587, 2009 WL 3775149, at *4 (Iowa Ct. App. Nov. 12, 2009) (noting officer's description of defendant's driving behavior was "not evidenced on the video recording, which the officer testified captured all observations" and therefore declining to consider it). As the district court noted, the video recording more accurately shows that Murphy's truck "straddled" the fog line such that the passenger side tires were the only parts touching the gravel shoulder of the road. It is also notable that the deputy's dashboard camera captured Murphy's truck straddling the right fog line just as it was coming around a curve that headed in a leftward direction. After navigating the curve, Murphy continued on the fog line for only one to two more seconds before returning to the roadway.

Based on the totality of the circumstances, we cannot conclude the deputy had reasonable suspicion to stop Murphy's vehicle. Consistent with *Tague*, and other cases in line with its facts, we do not believe Murphy's one-time act of crossing the fog line with his truck's passenger side tires gave rise to a reasonable suspicion that he was driving while intoxicated. *See, e.g., State v. Lobo*, No. 17-1768, 2019 WL 762192, at *7 (Iowa Ct. App. Feb. 20, 2019) (Tabor, P.J., dissenting) (collecting cases that found no reasonable suspicion for a traffic stop). By focusing only on whether Murphy's truck crossed the fog line "just barely" and for how long, the district court overlooked the important point from *Tague*—that there must be more than a single instance of poor driving so as to distinguish between everyday drivers who make a momentary mistake and those who are reasonably suspected to be driving while impaired. *See* 676 N.W.2d at 205 (recognizing that failure to stay within lane lines "happens all too often" from drivers

"talking on their cell phone, looking at a map, adjusting the radio, adjusting the heater, defroster or air condition, or checking on a child restrained in the back seat").

Like Murphy, we find it significant that the State failed to cite a single case from our appellate courts concluding "that a stop of a vehicle was constitutional based upon a single, isolated incident of crossing an edge or fog line." All of the cases upholding investigative traffic stops based on reasonable suspicion involved "more than a person weaving within their own lane or 'briefly crossing an edge line of a divided roadway.'" *See Lobo*, 2019 WL 762192, at *3 (collecting cases finding reasonable suspicion for a traffic stop). Indeed, the only case cited by the State as comparable to this one involved a vehicle that made a wide turn on a corner, crossed "the center line on occasion," and weaved over the fog line before "crossing a rumble strip, leaving the travel portion of the highway, and driving on the shoulder until" coming to a stop sign. *See State v. Sorenson*, No. 14-1101, 2016 WL 718984, at *1 (Iowa Ct. App. Feb. 24, 2016).

Because we conclude the deputy did not have reasonable suspicion to stop Murphy's vehicle, the stop constituted an unlawful seizure under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Accordingly, all evidence obtained as a result of that seizure must be suppressed. We thus reverse the denial of Murphy's motion to suppress, vacate his conviction and sentence, and remand for further proceedings consistent with this opinion. *See State v. Stevens*, 970 N.W.2d 598, 611 (Iowa 2022).

**REVERSED AND REMANDED.**