STATE of Iowa, Appellant,

v.

Steven Eugene TAGUE, Appellee.

No. 02–1802.

Supreme Court of Iowa.

Feb. 25, 2004.

Rehearing Denied March 19, 2004.

■■■■■■■■■■■■■

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, William E. Davis, County Attorney, and Marc Gellerman, Assistant County Attorney, for appellant.

Kent A. Simmons, Davenport, for appellee.

WIGGINS, Justice.

This appeal involves a decision by the district court sustaining Steven Tague's motion to suppress evidence obtained after an officer stopped Tague's vehicle for crossing the left edge line of a divided highway. The district court ordered all evidence gained as a direct result of the stop suppressed and inadmissible at trial. The State filed an application for discretionary review, which we granted. We do not believe the police had sufficient grounds to stop Tague's vehicle. This stop violated Tague's rights as guaranteed by article I, section 8 of the Iowa Constitution. The officer did not have probable cause or reasonable suspicion to stop Tague's vehicle when it briefly crossed the left edge line. We affirm the ruling of the district court.

## I. Background Facts and Proceedings.

Shortly before 2 a.m. on July 22, 2002, police officer Michael Gonzales of the Le Claire Police Department was traveling north in his patrol vehicle on Cody Road in Scott County, Iowa. Cody Road is a four-lane highway, with two lanes of traffic heading north and two lanes heading south. A painted median divides these lanes. Officer Gonzales observed a vehicle driven by Tague enter Cody Road and proceed northbound in the inside lane. Officer Gonzales observed Tague's vehicle for about a mile. Just as the vehicles approached the Interstate 80 junction, Officer Gonzales observed the left tires of Tague's vehicle cross over the left edge line of Cody Road and return to the roadway. At that point, Officer Gonzales activated his vehicle's overhead emergency lights and stopped Tague's vehicle. When Officer Gonzales asked Tague for his driver's license, he detected the odor of alcohol on Tague. He also noticed a slight slur to Tague's speech and that Tague had bloodshot, watery eyes. Officer Gonzales asked Tague if he had been drinking. Tague responded that he had a couple of alcoholic beverages.

Officer Gonzales conducted a field sobriety test, which resulted in Tague's arrest for operating under the influence. Officer Gonzales also issued Tague a citation for driving left of center in violation of Iowa Code section 321.297 (2001).

Officer Gonzales transported Tague to the police station where he administered a breath test. The breath test showed Tague had a .201 blood alcohol content. The State charged Tague with operating while intoxicated, third offense, and driving under suspension while barred as a habitual offender. Tague moved to suppress the evidence of his intoxication, alleging the officer who stopped Tague's vehicle lacked reasonable cause to make the stop and detain Tague in violation of the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.

At the hearing on the motion to suppress, Officer Gonzales testified he did not observe Tague driving erratically and could not recall whether Tague's vehicle was weaving on the roadway. When asked to describe the movement of Tague's vehi-

cle, he testified he observed both left tires just barely, but completely cross the left edge line and "then they came back" on the roadway. The district court granted the motion to suppress and ordered all evidence gained as a direct result of the stop, including the Data Master breath test results, suppressed and inadmissible at trial. The State filed an application for discretionary review, which we granted.

## II. Issue.

This court must determine whether there was probable cause or reasonable suspicion to legally stop Tague's vehicle and detain him under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.

## III. Scope of Review.

 This controversy arises from an alleged violation of a constitutional right, making our review de novo. *State v. Naujoks,* 637 N.W.2d 101, 106 (Iowa 2001). The court makes an "independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Turner,* 630 N.W.2d 601, 606 (Iowa 2001). We give considerable deference to the trial court's findings regarding the credibility of the witnesses, but are not bound by them. *Turner,* 630 N.W.2d at 606; *State v. Liggins,* 524 N.W.2d 181, 186 (Iowa 1994).

## IV. Analysis.

 *A. Probable Cause.* When a peace officer observes a violation of our traffic laws, however minor, the officer has probable cause to stop a motorist. *State v. Mitchell,* 498 N.W.2d 691, 693 (Iowa 1993). "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee commit-

ted or is committing it." *State v. Bumpus,* 459 N.W.2d 619, 624 (Iowa 1990). The State has the burden to prove by a preponderance of the evidence that the officer had probable cause to stop the vehicle. *See State v. Cadotte,* 542 N.W.2d 834, 836 (Iowa 1996), *abrogated on other grounds by Turner,* 630 N.W.2d 601.

 On the morning of July 22, 2002, Officer Gonzales stopped and cited Tague for violating Iowa Code section 321.297's prohibition against driving left of center. At the hearing on the motion to suppress, he testified that he stopped Tague's vehicle to check on the driver's safety. At that same hearing, the county attorney argued Tague violated section 321.306 regulating laned roadways. The validity of the search and seizure does not depend on the actual motivation of Officer Gonzales when he made the stop. *State v. Cline,* 617 N.W.2d 277, 280–81 (Iowa 2000), *abrogated on other grounds by Turner,* 630 N.W.2d 601. The State is not limited to the reasons stated by Officer Gonzales in justifying the challenged stop. *Id.*

 To determine if the police had probable cause to stop Tague for violating section 321.297 or 321.306, we must first interpret these sections. In interpreting these sections, our goal is to determine the legislature's intent when it enacted these statutes. *State v. Wagner,* 596 N.W.2d 83, 87 (Iowa 1999). "We do not speculate as to the probable legislative intent apart from the words used in the statute." *State v. Adams,* 554 N.W.2d 686, 689 (Iowa 1996); *accord State v. Welton,* 300 N.W.2d 157, 160 (Iowa 1981) (stating, "when a statute is plain and its meaning is clear, courts are not permitted to search for meaning beyond its expressed terms"). "Although the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent." *T & K Roofing Co. v. Iowa Dep't of*

*Educ.*, 593 N.W.2d 159, 163 (Iowa 1999). In addition, "legislative intent is to be gleaned from the statute as a whole, not from a particular part only." *De More v. Dieters*, 334 N.W.2d 734, 737 (Iowa 1983). If the language of the statute is clear and unambiguous, we apply a plain and rational meaning consistent with the subject matter of the statute. *City of Waukee v. City Dev. Bd.*, 590 N.W.2d 712, 717 (Iowa 1999).

The State first claims the officer had probable cause to stop Tague for a traffic violation under section 321.297. Section 321.297, entitled "Driving on right-hand side of roadway—exceptions," provides in relevant part:

1. A vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width, except as follows:

 a. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.

 b. When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute an immediate hazard.

 c. Upon a roadway divided into three marked lanes for traffic under the rules applicable thereon.

 d. Upon a roadway restricted to one-way traffic.

 . . .

3. A vehicle shall not be driven upon any roadway having four or more lanes for moving traffic and providing for two-way movement of traffic, to the left of the center line of the roadway, except when authorized by official traffic-control devices designating certain lanes to the left side of the center of the roadway for use by traffic not otherwise permitted to use such lanes, or except as permitted under subsection 1, paragraph "*b.*" This subsection shall not be construed as prohibiting the crossing of the center line in making a left turn into or from an alley, private road, or driveway.

The clear meaning from the plain language of the entire statute is readily ascertainable. Section 321.297 prohibits an operator of a motor vehicle to drive his or her vehicle left of center, unless an exception exists under the statute. Section 321.297(3) is the specific section of the statute applicable to Tague's conduct on the night of the stop, because Cody Road was a "roadway having four or more lanes for moving traffic and providing for two-way movement of traffic." Section 321.297(3) prohibits Tague from driving to the left of the center line of Cody Road.

The Department of Transportation (DOT) is required to "adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state." Iowa Code § 321.252. The DOT adopted the "Manual on Uniform Traffic Control Devices" (MUTCD), which is published by the U.S. Department of Transportation, Federal Highway Administration. Iowa Admin. Code r. 761–130.1 (2001). MUTCD defines traffic control devices as "all signs, signals, markings, and other devices used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, highway, pedestrian facility, or bicycle path by authority of a public agency having jurisdiction." MUTCD § 1A.13(83) (2000). MUTCD defines edge line markings as "white or yellow pavement marking lines that delineate

the right or left edge(s) of a traveled way." *Id.* § 1A.13(21). The line that Tague's vehicle crossed was an edge line marking, not the center line of Cody Road. A median divided the northbound traffic from the southbound traffic on Cody Road. For purposes of Iowa Code section 321.297(3), the median was the center line. Tague did not drive his vehicle "to the left of the center line of the roadway," which is the conduct prohibited by section 321.297(3). Therefore, Tague's momentary crossing of the edge line did not give the officer probable cause to stop Tague for a traffic violation under section 321.297.

■ The State next claims the officer had probable cause to stop Tague for a traffic violation under section 321.306. Section 321.306, entitled "Roadways laned for traffic," provides in pertinent part:

> Whenever any roadway has been divided into three or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

■ The plain language of the statute requires that the driver of a vehicle must drive his or her vehicle as much as possible in a single lane, and that the driver cannot move from that lane to the shoulder or to another lane until the operator of the vehicle has ascertained whether he or she can move the vehicle safely. The dual purpose of the statute is to promote the integrity of the lane markings on the highway and to ensure the safe movement of vehicles on laned roadways. A violation does not occur unless the driver changes lanes before the driver ascertains that he or she could make such movement with safety. This interpretation is consistent with interpretations of identical statutes by courts that have considered the issue under similar facts as we have in the present case. *See United States v. Freeman,* 209 F.3d 464, 466–67 (6th Cir.2000) (holding the mere passage of defendants vehicle across the line separating the emergency lane of a highway from the right lane of travel did not constitute probable cause that defendant violated the unsafe lane change provision of Tennessee law); *United States v. Gregory,* 79 F.3d 973, 978 (10th Cir.1996) (holding an isolated incident of a vehicle crossing into emergency lane of roadway did not constitute probable cause that defendant violated the unsafe lane change provision of Utah law); *State v. Lafferty,* 291 Mont. 157, 967 P.2d 363, 366 (1998) (holding crossing of the edge line twice and driving on the edge line once did not constitute probable cause that defendant violated the unsafe lane change provision of Montana law); *Rowe v. State,* 363 Md. 424, 769 A.2d 879, 889 (2001) (holding a driver's momentary crossing of edge line of roadway and later touching of that line did not constitute probable cause that defendant violated the unsafe lane change provision of Maryland law); *Crooks v. State,* 710 So.2d 1041, 1042–43 (Fla.Dist.Ct.App.1998) (holding three occasions of drifting over the right edge line did not constitute probable cause that defendant violated the unsafe lane change provision of Florida law).

There was no other traffic on the roadway at the time Tague's vehicle crossed the edge line. He was not driving his vehicle in an erratic manner, violating any speed restrictions, or weaving his vehicle from side to side on the roadway. Despite the fact Tague's vehicle just barely crossed the left edge line for a brief period, the State failed to prove by a preponderance of evidence any objective basis to believe Tague's movement was done without first

ascertaining that he could make such movement with safety. Thus, Tague's single incident of crossing the edge line for a brief moment under these circumstances did not give the police probable cause to stop Tague for a traffic violation under section 321.306.

For these reasons, we do not believe the officer had probable cause to stop Tague's vehicle for a traffic violation under article I, section 8 of the Iowa Constitution.

*B. Reasonable Suspicion.* The State claims that the circumstances of Tague's driving suggest Tague was either intoxicated or fatigued, which warranted the stop of Tague's vehicle. To justify such a stop on the basis Tague was intoxicated and briefly detain him for investigatory purposes, the police need only have reasonable suspicion, not probable cause, to believe criminal activity has occurred or is occurring. *State v. Kinkead,* 570 N.W.2d 97, 100 (Iowa 1997) (citing *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)). When a person challenges a stop on the basis that reasonable suspicion did not exist, the State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred. *State v. Heminover,* 619 N.W.2d 353, 357 (Iowa 2000), *abrogated on other grounds by Turner,* 630 N.W.2d 601 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906). Mere suspicion, curiosity, or hunch of criminal activity is not enough. *State v. Kreps,* 650 N.W.2d 636, 641 (Iowa 2002). Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting the officer, including all information available to the officer at the time the officer makes the decision to stop the vehicle. *Id.* at 642. The legality of the stop does not depend on the actual motivations of the officer involved in the stop. *Heminover,* 619 N.W.2d at 357.

To justify a stop on the basis Tague was fatigued, the State must rely on the "community caretaking function" of the police. *State v. Mitchell,* 498 N.W.2d 691, 694 (Iowa 1993). The State charges local police officers with duties that go beyond investigating and enforcing the criminal laws of this state. *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–15 (1973). The community caretaking function is applicable in cases where the police stop vehicles in the interest of public safety. *Mitchell,* 498 N.W.2d at 693–94. We review a stop based on the community caretaker function on an objective standard: whether the facts available to the officer at the time of the stop would lead a reasonable person to believe that the action taken by the officer was appropriate. *Id.* at 693.

The State claims an objective view of the record suggests Tague may have been driving while either intoxicated or fatigued. The State cites numerous cases from this and other jurisdictions to support its contention. In *State v. Tompkins,* 507 N.W.2d 736, 740 (Iowa Ct.App.1993), our court of appeals held that a police officer's observance of the defendant's car weaving from the center lane to the right side boundary several times, even though the vehicle never crossed the center line or the right side edge line, gave the officer reasonable suspicion to stop the defendant for investigatory purposes. In *State v. Otto,* 566 N.W.2d 509 (Iowa 1997), we discussed the *Tompkins* holding. We stated:

> We do not believe *Tompkins* should be read to hold that observations of a vehicle weaving within one's own lane of traffic will always give rise to reasonable suspicion for police to execute a stop of

the vehicle. Rather, the facts and circumstances of each case dictate whether or not probable cause exists to justify stopping a vehicle for investigation.

*Otto*, 566 N.W.2d at 511.

In *Otto*, we held that an officer had reasonable suspicion to stop the defendant who was driving forty in a fifty-five mile per hour speed zone, changing her speed erratically, veering left and right at sharp angles, and constantly going back and forth from left to right over a three and a half mile distance. *Id.* at 510–11. We believe that the facts in *Otto* and *Tompkins* are distinguishable from the present case. Tague's left tires barely crossed the edge line once for a very brief period. The officer did not observe Tague driving erratically or his vehicle weaving on the roadway in the mile he followed the vehicle. Tague's driving did not amount to the weaving or the erratic speeds observed by the officers in *Tompkins* and *Otto*.

The State also cites cases from other jurisdictions in support of its position. In *State v. Slater*, the officer observed both right side tires of the defendant's vehicle cross the edge line. 136 Idaho 293, 32 P.3d 685, 688 (2001). The officer followed the defendant's vehicle for several miles, observing the defendant changing speeds from forty to sixty-five miles per hour in a seventy-five mile per hour zone. *Id.* at 689. The court in *Slater* found a single incident of crossing the edge line violated Idaho law, which prohibits driving on the shoulder. *Id.* at 690. We have previously determined that Tague's actions did not violate Iowa law, which distinguishes *Slater's* holding from the present case. Further, the court in *Slater* found the totality of the circumstances, the defendant driving 10 to 35 miles per hour under the lawful speed limit, coupled with his crossing of the edge line, gave the police reasonable suspicion the defendant might have been driving under the influence or needed assistance. *Id.* *Slater's* additional fact of erratic speed also distinguishes *Slater* from the instant case.

The State also cites *State v. Shivers*, 827 So.2d 534 (La.Ct.App.2002). In *Shivers*, defendant drove his vehicle across the center line and in the opposite lane for approximately fifty yards for five seconds. 827 So.2d at 535. The court in *Slater* found the defendant's actions violated Louisiana traffic laws, which gave the police probable cause to stop the vehicle. *Shivers*, 827 So.2d at 536. Similar to the case of *Slater*, we find the court's holding in *Shivers* to be inapplicable, because we find Tague's actions did not violate Iowa law.

In reviewing the totality of the circumstances objectively, we believe that any vehicle could be subject to an isolated incident of briefly crossing an edge line of a divided roadway without giving rise to the suspicion of intoxication or fatigue. *See Gregory*, 79 F.3d at 978. As the district court noted in its decision, "it happens all too often." Drivers talking on their cell phone, looking at a map, adjusting the radio, adjusting the heater, defroster or air conditioner, or checking on a child restrained in the back seat can lead a driver to momentarily cross an edge line, without giving rise to a reasonable suspicion of intoxication or fatigue.

There was no testimony as to any factors, which would support a reasonable suspicion, that Tague was intoxicated or fatigued. The officer could not recall whether Tague's vehicle was weaving and testified that Tague was not driving erratically on Cody Road. The officer did not notice Tague nod his head or show any sign of drowsiness. "[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road [was] sufficient [reason] to suspect a person of driving while impaired, a substantial portion of the

public would be subject each day to an invasion of [its] privacy." *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir.1993).

We do not believe that the officer had sufficient grounds to stop Tague's vehicle. An objective review of the totality of the circumstances requires us to find the stop did not meet the reasonableness test of article I, section 8 of the Iowa Constitution, which protects the security of one's privacy against arbitrary intrusion by the police.

## V. Conclusion and Disposition.

The officer did not have probable cause or reasonable suspicion to stop Tague's vehicle. This stop violated Tague's rights as guaranteed by article I, section 8 of the Iowa Constitution. We, therefore, need not address Tague's federal constitutional claim. Thus, all evidence flowing from the stop is inadmissible. We affirm the trial court's ruling sustaining Tague's motion to suppress and remand the case for further proceedings not inconsistent with this opinion.

**AFFIRMED AND CASE REMANDED.**