# IN THE COURT OF APPEALS OF IOWA

No. 19-0321
Filed April 15, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RODNEY EUGENE WADDEN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, Mary E. Howes (suppression) and Tom Reidel (trial), Judges.

        Rodney Wadden appeals his conviction for driving while barred in violation of Iowa Code sections 321.561 and 321.562 (2018) and driving with a revoked license in violation of Iowa Code section 321J.21, challenging the denial of his motion to suppress evidence obtained following the stop of his vehicle. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

        Jeffrey L. Powell of Powell & McCullough, PLC, Coralville, for appellant.

        Thomas J. Miller, Attorney General, and Katie Krickbaum, Assistant Attorney General, for appellee.

        Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

Rodney Wadden appeals his convictions for driving while barred in violation of Iowa Code sections 321.561 and 321.562 (2018) and driving with a revoked license in violation of Iowa Code section 321J.21, challenging the denial of his motion to suppress evidence obtained following the stop of his vehicle. On appeal, Wadden argues the law enforcement officer who stopped his vehicle did not have reasonable suspicion to conduct a traffic stop.

## I. Background

In January 2018, a deputy with the Muscatine County Sheriff's Office was assisting another officer with a traffic stop when he observed Wadden's truck traveling on the highway. The officer later testified about his observations:

> Q. What caught your attention? A. A white Chevy truck driving south on Highway 61 past the intersection where we were located, and it looked like the truck drove off onto the shoulder as it drove by us.
> Q. What did you do then? A. I got in my car and caught up to the vehicle.
> Q. And if you could describe, when you say "drove off the shoulder," I know that sounds obvious, but can you give us a little more detail about what you saw? A. It appeared that the truck actually drove towards the gravel shoulder outside the lane of travel between the center line and the constant fog line where the vehicles travel.
> Q. The fog line would be the right solid line on the right side of the road? A. Yes.

The dashboard camera in the officer's squad vehicle captured the rest of the events at issue. The camera footage shows the officer's squad vehicle approached Wadden's vehicle from behind at a fast speed with both vehicles travelling in the right lane of the four-lane highway. When the squad vehicle moved within several car lengths of Wadden's vehicle, the squad vehicle transitioned to

the left lane. As the squad vehicle rapidly closed the distance, Wadden briefly braked several times, drifted onto or over the fog line[1] on the right side of the right lane, and activated his left turn signal from the right lane but did not make the lane change at that time. After the officer passed Wadden, the squad vehicle turned left onto another road. Although it is not depicted on the video because Wadden's vehicle was then behind the squad vehicle and no longer in the camera's view, the testimony established Wadden followed the squad vehicle by making a left-hand turn onto the same road. After completing the left-hand turn, the officer then turned right into a convenience store parking lot, slowed long enough to allow Wadden's vehicle to pass by on the road, re-entered the road behind Wadden's vehicle, and initiated a traffic stop. During the stop, Wadden informed the officer he did not have a license to operate the vehicle.

The State charged Wadden with: (1) driving while barred in violation of Iowa Code sections 321.560 and 321.561; (2) driving with a revoked license in violation of Iowa Code section 321J.21; and (3) unlawful possession of a prescription drug in violation of Iowa Code section 155A.21. Wadden moved to suppress all evidence gathered following the traffic stop, arguing the officer did not have "reasonable grounds" to conduct the stop. After a hearing, the district court denied the motion. The ruling explained the court's analysis in one sentence, which states the officer "testified he was on duty and observed the defendant crossing the fog line, weaving, and also improper use of turn signal." After a bench trial, the court

---

[1] For ease of reference and to be consistent with the terminology used in the suppression hearing and briefs, we will refer to the solid white line on the far right-hand side of the road as the "fog line."

found Wadden guilty of the driving-while-barred and driving-with-a-revoked-license charges and not guilty of the unlawful-possession charge. Wadden appeals.

## II. Standard of Review

"A district court's denial of a motion to suppress based on the depr[i]vation of a constitutional right is reviewed de novo." *State v. Salcedo*, 935 N.W.2d 572, 577 (Iowa 2019). We independently evaluate "the totality of the circumstances." *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017) (quoting *In re Prop. Seized from Pardee*, 872 N.W.2d 384, 390 (Iowa 2015)). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001).

## III. Discussion

Wadden argues the officer did not have a reasonable suspicion for stopping him.[2] "Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by the government." *Tyler*, 830 N.W.2d at 291. "A traffic stop is unquestionably a seizure under the Fourth Amendment." *Id.* at 292. An officer may "briefly stop an individual or vehicle for investigatory purposes when the officer has a reasonable, articulable suspicion that a criminal act has occurred, is occurring, or is about to occur." *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010).

---

[2] Wadden cites case law interpreting both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution on appeal. However, because he does not advocate for a separate standard or framework for evaluating article I, section 8, we will apply the federal standards for addressing search and seizure challenges. *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013).

> Reasonable suspicion to stop a vehicle for investigative purposes exists when articulable facts and all the circumstances confronting the officer at the time give rise to a reasonable belief that criminal activity may be afoot. Thus, we do not evaluate reasonable suspicion based on each circumstance individually, but determine the existence of reasonable suspicion by considering all the circumstances together.

*State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) (citations omitted). But "[i]f the State fails to carry its burden, all evidence obtained from the investigatory stop must be suppressed." *Vance*, 790 N.W.2d at 781. And "[a] mere hunch, unparticularized suspicion, or curiosity will not justify an investigatory stop." *Id.* On our de novo review, we conclude the officer did not have a reasonable suspicion of criminal activity to justify stopping Wadden's vehicle.

The State asserts three grounds in support of its claim there was reasonable suspicion to justify a traffic stop: (1) Wadden applied the brakes of his vehicle for no obvious reason; (2) Wadden activated his left-turn signal without attempting to turn or change lanes; and (3) Wadden crossed the fog line twice. Based on the circumstances, we find the events, when accurately characterized, did not justify a stop.

We will start with the issues related to braking and the turn signal. The State asserts Wadden "activate[d] his [left turn] signal without attempting to turn or change lanes," and "brake[d] for no obvious reason." This assertion mischaracterizes the facts by ignoring the fact that the officer's squad vehicle was approaching Wadden's vehicle in the left lane at a high rate of speed at that time, very quickly closing the gap between the vehicles, and Wadden indeed turned left shortly after the officer passed him. Wadden's actions of braking and turning off his turn signal allowed the squad vehicle to pass him, as he was obligated to do.

*See* Iowa Code § 321.299(2) ("[T]he driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle and shall not increase the speed of the overtaken vehicle until completely passed by the overtaking vehicle."). Wadden was then able to change lanes and move into the left turn lane to make his turn. We cannot say the preponderance of the evidence shows Wadden braking, briefly activating his turn signal and then turning it off to allow the approaching vehicle to pass, and then making a lane change and turn constituted suspicious behavior. In fact, it was legal and appropriate action by Wadden.

As for the fog line issue, the State asserts the officer observed Wadden's vehicle "cross" the fog line twice. With respect to the first alleged fog line crossing, the State argues the officer "saw [Wadden's vehicle] drive past on the shoulder of the highway." This assertion, however, mischaracterizes the officer's testimony. The officer testified "it looked like [Wadden's] truck drove off onto the shoulder as it drove by," and he clarified "[i]t appeared that [Wadden's] truck actually drove towards the gravel shoulder outside the lane of travel." The officer never testified he saw Wadden's vehicle traveling on the shoulder as the State asserts. At best, this testimony establishes Wadden drifted onto or over the fog line, not "onto the shoulder," and even that is dubious given that the officer qualified his observation of the claimed driving irregularity with the description that "it looked like" and "it appeared." Given these qualifiers, coupled with the fact the officer was assisting another officer with an unrelated traffic stop when the claimed driving irregularity occurred, there is some question whether the State met its burden of establishing this driving irregularity. In spite of that question, on our de novo review, we find

the officer did observe Wadden's vehicle drift onto the fog line before following Wadden's vehicle and capturing the rest of the events on the dashboard camera.

The second fog line touching was captured on video. The video shows Wadden's vehicle drifting to the right and briefly touching or crossing the fog line as the squad vehicle quickly approached and then passed it. Based on our review of the video, it appears that Wadden's action of drifting to the right occurred in response to the squad vehicle approaching at a high rate of speed in the left lane at the time Wadden was attempting to begin his lane change to the left lane.

The Iowa Supreme Court addressed a similar situation to the two fog line incidents in this case in *State v. Tague*, where police officers observed the left tires on the defendant's vehicle cross the left edge line[3] on the divided highway. 676 N.W.2d 197, 200 (Iowa 2004). The court held "an isolated incident of briefly crossing an edge line of a divided roadway" did not create a reasonable suspicion that the driver was intoxicated or fatigued. *Id.* at 205. The court noted that "failure to follow a perfect vector down the highway" does not constitute reasonable suspicion to justify a traffic stop. *Id.* (quoting *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir. 1993)). The court gave several examples of understandable circumstances that could lead to a driver crossing an edge line, including "[d]rivers talking on their cell phone, looking at a map, adjusting the radio, adjusting the heater, defroster or air conditioner, or checking on a child restrained in the back

---

[3] Based on the definition of "edge line" as described in *Tague*, we find the fog line in this case to be an "edge line." *Tague*, 676 N.W.2d at 202-03 (citing the Manual on Uniform Traffic Control Devices as defining "edge line markings" as "white . . . pavement marking lines that delineate the right . . . edge(s) of a traveled way.")

seat." *Id.* With regard to the second fog line incident in this case, we could add to the list "being overtaken by another vehicle approaching at a high rate of speed as the driver is about to change lanes."

While *Tague* involved a single incident of crossing an edge line and the current case involves two incidents, we do not read *Tague* as absolutely limiting its holding to a single incident. Given that the two incidents in this case were separated by considerable time and distance and the second incident occurred in response to a quickly-approaching squad vehicle, we find *Tague* applies to both incidents and precludes a finding of a reasonable suspicion to stop Wadden's vehicle. The two incidents in this case, being separated by considerable time and distance, coupled with the second incident occurring in conjunction with the rapidly-approaching vehicle, are distinguishable from the driving irregularities occurring in other cases where reasonable suspicion for a traffic stop has been found. *See, e.g.*, *State v. Otto*, 566 N.W.2d 509 (Iowa 1997) (finding reasonable suspicion for a stop when the defendant was driving forty miles per hour in a fifty-five mile-per-hour zone, changed speed erratically, veered left and right at sharp angles, and constantly went back and forth from left to right over a three-and-a-half mile distance); *State v. Tompkins*, 507 N.W.2d 736, 740 (Iowa Ct. App. 1993) (finding reasonable suspicion for a stop when the defendant's car weaved from the center line to the right-side boundary line several times even though the vehicle never crossed a line).

## IV. Conclusion

On our de novo review of the totality of the circumstances, we conclude the officer did not have reasonable suspicion to stop Wadden's vehicle. As a result,

the traffic stop violated Wadden's rights under the Fourth Amendment and article I, section 8, and we reverse the ruling of the district court and suppress all evidence obtained following the illegal stop. We remand for further proceedings consistent with this decision.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**