# IN THE COURT OF APPEALS OF IOWA

No. 23-0521
Filed November 21, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JISSEL MAGALI GOMEZ-TORRES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Steven P. Van Marel,

District Associate Judge.


        A defendant appeals her conviction for operating while intoxicated following

the denial of her motion to suppress.  **AFFIRMED.**


        Agnes G. Warutere of Warutere Law Firm, P.L.L.C., Ankeny, for appellant.

        Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


        Considered by Greer, P.J., Schumacher, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**GREER, Presiding Judge.**

Jissel Gomez-Torres appeals her conviction for operating while intoxicated (OWI), arguing that the court should have granted her motion to suppress. Because we find that there was reasonable suspicion that Gomez-Torres was operating her vehicle while intoxicated based on her driving, we affirm.

## I.      Background Facts and Prior Proceedings.

At approximately 2:34 a.m. on September 22, 2022, Story County Sheriff's Deputy Matthew Massaro observed a vehicle drive over the dashed white center line on the westbound Highway 30 exit ramp (the flyover or overpass) coming off of Interstate 35 and noted the driver continued driving in the middle of the two lanes on the second portion of that flyover.  As he continued behind the vehicle, he also saw it weave within its lane and vary its speed from sixty-five miles per hour (mph) on the flyover to forty-five and back up to fifty-five mph on Highway 30, even though the speed limit was sixty-five mph.  After the driver activated the turn signal late, the deputy noted the driver appeared to almost miss the turn onto the University Boulevard exit ramp off of Highway 30, and the vehicle drove over the exit ramp's solid white lines and the gore[1] in the process.  It was at that point that Deputy Massaro initiated a traffic stop of the vehicle.  Once stopped, Deputy Massaro identified the driver of the vehicle from her driver's license and insurance information as Gomez-Torres.

The State charged Gomez-Torres via trial information with OWI, first offense, in violation of Iowa Code section 321J.2(2)(A) (2022), a serious

---

[1] The gore is the triangular part of a highway in between the highway's lanes and an exit ramp.  *See Gore*, Merriam-Webster (3rd ed. 2002).

misdemeanor, in October 2022. Gomez-Torres moved to suppress the evidence obtained following the stop of her vehicle, arguing that Deputy Massaro stopped her vehicle without reasonable suspicion in violation of the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.

At the hearing on the motion to suppress in February 2023, Deputy Massaro testified that he did not observe Gomez-Torres exceed the speed limit of sixty-five mph or fall below the minimum speed limit. He also confirmed he did not begin following her vehicle based on any observation of a traffic violation. In fact, he stated he was not "entirely sure" what caused him to begin following the vehicle. In all, he opined that his observations encompassed four or five minutes of following her vehicle for a distance of about three or four miles. As additional evidence, the State offered and the district court admitted Deputy Massaro's dashboard camera footage. The dash cam footage begins after Deputy Massaro observed the vehicle drive in the middle of the two lanes on the flyover from Interstate 35 to Highway 30 westbound. Beginning at 2:34 a.m. and ending at 2:38 a.m. when Deputy Massaro initiates a traffic stop, the footage shows the driving maneuvers of Gomez-Torres. Because Deputy Massaro was pacing the vehicle, the footage also demonstrates—based on the patrol vehicle's speed—that Gomez-Torres's vehicle varied its speed from sixty-five mph down to forty-five mph and back up to fifty-five. Deputy Massaro testified to observing the same driving behaviors depicted in his dash camera video.

Gomez-Torres argued at the suppression hearing that the deputy's video "captured what happened here." Then, Gomez-Torres emphasized there was no traffic violation that led the deputy to start following her. In her view, a person

viewing the footage would find a driver who was not speeding, was driving smoothly and mostly straight with only one or two occasions where she may have crossed a line, but certainly not in any manner to raise a reasonable suspicion of impairment. The district court disagreed.

At the hearing, the district court orally denied the suppression motion, finding that Deputy Massaro had a reasonable and articulable suspicion that Gomez-Torres was operating her vehicle while intoxicated based on Gomez-Torres driving down the middle of two lanes over the dashed line dividing them, weaving in her lane, varying her speed, almost missing her exit, and driving over the gore area while crossing the solid white line. Ultimately, the district court concluded,

> [W]hen this court looks at the totality of the circumstances, that the officer did have reasonable and articulable suspicion that criminal activity was afoot. Maybe while none of these things individually would cause the court to make that determination, the court doesn't look at each of these as an individual event.

Gomez-Torres agreed to the OWI charge being submitted to the court for a bench trial on the minutes of testimony.[2] The district court found Gomez-Torres guilty as charged and sentenced her to two days in jail and a fine of $1250. Gomez-Torres now appeals.

## II. Standard of Review.

We review constitutional claims like this challenge to the denial of the suppression motion de novo. *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa

---

[2] The minutes of testimony reflected Gomez-Torres provided a chemical breath sample that tested at .185 blood alcohol level, which is over the legal limit. *See* Iowa Code § 321J.2 (2022).

2021); *see* U.S. Const. amend. IV; Iowa Const. art. I, § 8. In doing so, we conduct an independent evaluation of the totality of the circumstances. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) ("[W]e do not evaluate reasonable suspicion based on each circumstance individually, but determine the existence of reasonable suspicion by considering all the circumstances together.").

## III.    Analysis.

"A traffic stop is unquestionably a seizure . . . ." *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). Generally, the Fourth Amendment requires a warrant for a seizure. *See State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). To make a warrantless traffic stop of a vehicle, police must have probable cause or reasonable suspicion based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "When a peace officer observes any type of traffic offense, the violation establishes both probable cause to stop the vehicle and reasonable suspicion to investigate." *State v. Pennington*, 881 N.W.2d 471 (Iowa Ct. App. 2016); *see also McIver,* 858 N.W.2d at 702. Furthermore, "[r]easonable suspicion to stop a vehicle for investigative purposes exists when articulable facts and all the circumstances confronting the officer at the time give rise to a reasonable belief that criminal activity may be afoot." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). On the other hand, "[m]ere suspicion, curiosity, or hunch of criminal activity is not enough." *Id.* Because Gomez-Torres is only challenging the reasonable suspicion supporting the stop of her vehicle, we only address reasonable suspicion in our analysis.

Our supreme court established the bright-line rule that a single incident of briefly crossing the edge line of a divided highway, absent more, is not enough to raise reasonable suspicion of criminal activity. *Id.* at 205–06; *see also State v. Murphy*, No. 21-0938, 2022 WL 1100904, at *4 (Iowa Ct. App. Apr. 13, 2022) (applying *Tague* and stating, "we do not believe Murphy's one-time act of crossing the fog line with his truck's passenger side tires gave rise to a reasonable suspicion that he was driving while intoxicated").

However, in interpreting *Tague*, we have repeatedly found that a vehicle that does more than cross the edge line once for a couple of seconds may raise reasonable suspicion that the driver is intoxicated. *See State v. Lobo*, No. 17-1768, 2019 WL 762192, at *3 (Iowa Ct. App. Feb. 20, 2019) (collecting cases finding reasonable suspicion based on crossing of center and edge lines along with time of night); *see State v. Keith*, No. 17-1044, 2018 WL 2174089, at *2 (Iowa Ct. App. Apr. 4, 2018) (collecting cases finding reasonable suspicion based on swerving, weaving, and crossing of center and edge lines). In fact, when considering a set of similar circumstances, we determined that the stopping officer had reasonable suspicion to support the traffic stop. *See State v. Sorenson*, No. 14-1101, 2016 WL 718984, at *1 (Iowa Ct. App. Feb. 24, 2016) (finding reasonable suspicion when a vehicle made a wide turn on a corner, crossed "the center line on occasion," and weaved over the fog line before "crossing a rumble strip, leaving the travel portion of the highway and driving on the shoulder until" coming to a stop sign). Even more, our supreme court has clarified the *Tague* standard to add that "[w]eaving within one's own lane and changing speeds without exceeding the speed limit do not violate any statute, but they do provide evidence

of impairment." *State v. Struve*, 956 N.W.2d 90, 104 (Iowa 2021). And we consider the totality of all observed driving behaviors in determining whether reasonable suspicion of impaired driving existed. *McIver*, 858 N.W.2d at 702.

Here, Deputy Massaro observed more than a single crossing of the white edge line of the highway. Instead, he testified to—and the dash camera footage supported—"something more": Gomez-Torres driving down the middle of two lanes over the dashed line dividing the lanes, weaving in her lane and touching the dashed center line and solid edge line in the process, varying her speed to twenty miles below the speed limit, almost missing her exit and activating her turn signal only after doing so, and driving over the gore area next to the exit while crossing the solid white line separating the exit from the highway lanes. Taken together, these actions rise above the level of a single isolated incident of briefly touching the edge line. Therefore, Deputy Massaro had sufficient evidence of impairment to raise a reasonable and articulable suspicion of criminal activity, namely, that Gomez-Torres was driving while intoxicated, and the warrantless traffic stop was not a violation of her constitutional rights.

## IV. Conclusion.

Because Deputy Massaro's stop of Gomez-Torres's vehicle was supported by reasonable suspicion based on more than a single, isolated incident of touching the edge line of the road, we find, like the district court, that Gomez-Torres's motion to suppress should be denied, and we affirm her conviction for OWI, first offense.

**AFFIRMED.**