**IN THE COURT OF APPEALS OF IOWA**

No. 23-0331
Filed January 24, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**NICHOLAS ALEXANDER SINCLAIR,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Gregory D. Brandt, District Associate Judge.

    The defendant challenges the denial of his motion to suppress following his conviction for operating while intoxicated. **AFFIRMED.**

    Sydney N. Ross of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for appellant.

    Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

    Heard by Bower, C.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Nicholas Sinclair challenges the denial of his motion to suppress following his conviction for operating while intoxicated (OWI). He asserts that the State failed to meet its burden to demonstrate by a preponderance of the evidence that the stopping officer had specific and articulable facts to support a reasonable belief that Sinclair was involved in criminal activity, and therefore the stop of his vehicle was unconstitutional. Upon our de novo review, we affirm.

**I. Background Facts and Prior Proceedings.**

At approximately 11:52 p.m. on Monday, October 3, 2022, a person called 911 to report a disturbance in a gated community. According to the dispatch notes, the 911 caller reported that "there was a female outside of her house freaking out." Two minutes later, the caller—who was still on the line with dispatch—said someone drove by the area in a black SUV and tried to talk to the woman standing outside but then left. Next, the caller reported the woman outside was shouting, "Please help me. Don't hurt me." The 911 caller relayed a belief the woman was intoxicated. At 11:56 p.m., a second 911 caller from the area reported a woman who was across the street screaming and noted a black SUV "keeps driving by." The 911 caller heard someone in the black SUV yell at the woman. The caller reported further movements of the woman, saying she sat down in the grass, got up and walked up the driveway, and then tried "to get into the front door of [the] neighbor's house."

Officer Chelsea Dexter of the West Des Moines Police Department was the first to respond to the scene. As she was approaching the area, she communicated via radio that she passed a black Dodge Durango and that it was headed towards

and relatively close to the gate. West Des Moines Police Officer Kyle Turlow[1] responded next. Moments after Officer Dexter arrived at the scene, Officer Turlow passed a "dark color black SUV" leaving the gated community. There were no other vehicles in the area. Officer Turlow turned around and followed the vehicle out of the gated community and onto a residential street before performing a traffic stop of the vehicle around midnight. The vehicle was a dark gray Lincoln Navigator; Sinclair was the driver.

The State charged Sinclair via trial information with OWI, a serious misdemeanor, in violation of Iowa Code section 321J.2(2)(a) (2022). In December 2022, Sinclair filed a motion to suppress the evidence seized following the stop, arguing that Officer Turlow lacked specific and articulable facts to support a reasonable belief that Sinclair was involved in criminal activity to justify the traffic stop. The district court held an evidentiary hearing on the motion in January 2023. At the hearing, the State offered, and the district court admitted, the dispatch log from October 3 into evidence. The State also called Officer Turlow to testify. He testified that it was "pretty dark" out at the time of the traffic stop. He also stated that Sinclair's vehicle was a dark enough color that it could have been mistaken for black but, after he stopped, the officer recognized it was a dark gray color. Finally, Officer Turlow testified that there were no other vehicles leaving the gated community that could have possibly matched the description of the black SUV and that Sinclair's vehicle was the only dark-colored SUV in the area at that time.

---

[1] The officer's last name is not spelled consistently in our record; we use the spelling provided by the officer as part of his suppression hearing testimony.

The district court denied Sinclair's motion to suppress in February 2023, determining that under the totality of the circumstances, the officer was justified in briefly stopping the SUV for an investigative purpose. After the denial of the motion, Sinclair stipulated to a bench trial on the minutes, and the court found Sinclair guilty of OWI. Sinclair was sentenced to one year in prison with all but three days suspended and given credit for one day of time served, for a total term of imprisonment of two days, which Sinclair could satisfy by participating in a weekend program rather than serving jail time. The court also placed Sinclair on probation for one year and, as part of probation, required that he follow through with substance-abuse treatment. Sinclair appeals.

## II. Standard of Review.

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022) (citation omitted). This means "[w]e review the entire record to independently evaluate the totality of the circumstances and examine each case 'in light of its unique circumstances.'" *Id.* (quoting *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019 )). "We give considerable deference to the trial court's findings regarding the credibility of the witnesses, but [we] are not bound by them." *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004).

## III. Analysis.

Sinclair renews his argument that Officer Turlow did not have specific and articulable facts to support a reasonable belief that he was involved in criminal activity and, therefore, the stop of his vehicle violated the Fourth Amendment to

the United States Constitution and article I, section 8 of the Iowa Constitution. Sinclair argues: "[t]he facts available to [Officer Turlow] preceding the 'investigatory contact' of the gray Lincoln Navigator show he acted on a generalized suspicion that criminal activity may have been afoot, and an unparticularized hunch that an occupant of the gray Lincoln Navigator committed those imaginary illicit acts." Hence, his rights were violated when the stop occurred. "Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by the government." *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). Although a traffic stop is a seizure, *State v. Arrieta*, ___ N.W.2d ___, ___, 2023 WL 8483980, at *2 (Iowa 2023), it is reasonable when supported by probable cause or reasonable suspicion of a crime. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) ("Probable cause of a crime supports an arrest, while reasonable suspicion of a crime allows a peace officer to stop and briefly detain a person to conduct a further investigation.").

> When a person challenges a stop on the basis that reasonable suspicion did not exist, the State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred.

*Tague*, 676 N.W.2d at 204. These facts comprise "the totality of the circumstances confronting the officer, including all information available to the officer at the time the officer makes the decision to stop the vehicle." *Id.* "The principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot." *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002) (citation omitted). This criminal activity may already have occurred, presently be occurring, or be about to occur. *Id.* at 647. We review for whether "the possibility of criminal conduct was

strong enough that, upon an objective appraisal of the situation, we would be critical of the officers had they let the event pass without investigation." *Id.* at 642 (citation omitted). A two-day-old report of a gray vehicle covered in dust and with out-of-county license plates was not strong enough. *State v. Medrano*, No. 13-1941, 2015 WL 567922, at *2 (Iowa Ct. App. Feb. 11, 2015). But on these facts, we find that the State met its burden to show the stop of Sinclair was legal.

Here, the facts known by Officer Turlow at the time of the stop included the information provided by the two 911 callers. "[I]nformation imparted by a citizen informant is generally reliable." *Id.* (citing *State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990)). The facts also included the information communicated by Officer Dexter. *See State v. Baker*, No. 17-0622, 2018 WL 4922970, at *5 (Iowa Ct. App. Oct. 10, 2018) (finding that an officer properly included communication from an investigator who was not present at the investigatory stop in determining that he had reasonable suspicion to stop the defendant's vehicle). Under those reported facts, Officer Turlow was aware that a woman was described as "freaking out" and attempting to get into a nearby home such that two neighbors were so concerned they each requested assistance by calling 911. And those two 911 callers identified someone in a black SUV driving past the woman repeatedly and either yelling at her or attempting to speak with her. Around this time, one caller quoted the woman as saying, "please help me, don't hurt me." All of these events occurred within a gated community late on a Monday night. The events reported by the 911 callers also all occurred within a few minutes—between the first 911 call at 11:52 p.m. and Officer Turlow stopping Sinclair around midnight.

Sinclair argues that while there were observations of the black SUV and the actions of the black SUV's driver that came from the 911 callers, there was no rational connection for suspicion of him and his gray Lincoln Navigator. And Officer Dexter, who should be trained to note color and make of a vehicle, identified a black Dodge Durango as she was approaching the distressed woman. But Officer Turlow testified that the distressed woman was inside of a gated community and that he saw Sinclair's vehicle leaving the entrance to the gated community moments after Officer Dexter saw the reported Dodge Durango. To the State's point, at the same time as Officer Dexter's report, the only vehicle in the area was Sinclair's and, in the dark of the night, it appeared to be a black-colored SUV. Thus, there was a reasonable inference that the SUV was actually the one involved even though the details were not exact.

Additionally, according to Sinclair, even if it was reasonable to infer that his gray Lincoln Navigator was the vehicle that continued to return to the distressed woman, there was no information from the 911 callers or observations by the officers that the SUV driver was engaged in criminal activity, that the woman was in any way injured, or that an assault had been observed to put context to the woman's cries. Sinclair points to a belief by one 911 caller that the distressed woman looked intoxicated, suggesting the woman was the one engaged in illegal activity (like public intoxication) rather than intimating the SUV driver was. But in our independent evaluation of the totality of the circumstances found in the record, we conclude Officer Turlow had reason to believe criminal activity was afoot. *See State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010).

First, contrary to Sinclair's characterization, the 911 callers tied the behavior of the dark SUV to the hysteria the woman showed by mentioning its presence. A reasonable officer could suspect that the driver of the vehicle had or was about to commit a crime when the driver continued to return to the frantic woman and make contact with her. Her cries of "please help me, don't hurt me" could lead an officer to infer that an assault is taking place. Likewise, the woman's attempt to enter a home as the dark SUV returned to her location could also suggest criminal involvement by the driver, such as harassment or a kidnapping. These facts support a reasonable suspicion to initiate an investigatory stop of the vehicle to determine the driver's involvement in the disturbance reported by the 911 callers. *See State v. McDowell*, No. 13-1259, 2015 WL 1046127, at *4 (Iowa Ct. App. Mar. 11, 2015) ("[T]he officers received information a person . . . had been involved in a disturbance and could properly stop McDowell to investigate whether he was the person involved and the nature of the disturbance."). Given these facts, concluding Officer Turlow was required to allow the only dark SUV exiting the gated community to pass without investigation would not be consistent with our task to view the officer's actions "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *Id.* at *3 (citation omitted). "The principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot." *Vance*, 790 N.W.2d at 780 (citation omitted). Officer Turlow was doing just that, so we affirm the denial of the suppression motion.

**IV. Conclusion.**

For the reasons stated above, we affirm the district court's ruling denying Sinclair's motion to suppress; we affirm his conviction and sentence for OWI.

**AFFIRMED.**