# IN THE COURT OF APPEALS OF IOWA

No. 24-1595
Filed October 15, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SARA SUZANNE BROWN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, Judge.

A defendant appeals the denial of her motion to suppress and sentence.

**AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered without oral argument by Chicchelly, P.J., Sandy, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**POTTERFIELD, Senior Judge.**

Following her conviction for operating while intoxicated (OWI), first offense, Sara Brown challenges the denial of her motion to suppress evidence. She concedes that the trooper who stopped her vehicle had probable cause for the stop because her vehicle's center break light was not working. Brown argues that the trooper violated her state and federal constitutional rights by unlawfully extending the duration of the stop. She also complains that the written sentencing order conflicts with the district court's oral pronouncement that she had no ability to pay category "B" restitution. *See* Iowa Code §§ 910.1(2) (2023) (defining category "B" restitution), .2A (explaining when the district court may waive a defendant's obligation to pay category "B" restitution).

**I. Background Facts and Proceedings.**

At about 12:30 in the morning, an Iowa State Patrol trooper noticed the van traveling in front of him did not have a working center break light. The trooper initiated a traffic stop and talked with the driver, Brown. He asked her for driver's license and insurance. During that process, the trooper noted Brown's rapid speech pattern, jerky body movements, and inability to remain still. These observations led the trooper to believe Brown could be under the influence of a stimulant drug. Additionally, the trooper smelled an odor of stale alcoholic beverage while he spoke with Brown.

The trooper then instructed Brown to exit the van so that she could accompany him to his patrol car while he issued a warning for the break light. While in the patrol car, the trooper told Brown he wanted to administer field sobriety testing to which she agreed. When completing the horizontal gaze nystagmus test,

Brown exhibited none of the six clues for intoxication. When completing the walk-and-turn test, Brown exhibited three of eight clues. She exhibited three of four clues of the one-leg-stand test. However, Brown consented to a preliminary breath test that showed a .000% BAC.

Believing Brown was under the influence of some stimulant, the trooper transported Brown to a county sheriff's office. Brown provided a urine sample. Subsequent testing of the sample was positive for methamphetamine. The State then charged Brown with OWI, first offense.

Brown filed a motion to suppress, claiming that the trooper unlawfully extended the traffic stop by asking Brown to accompany him to his patrol car and administering the field sobriety tests. The district court denied the motion, and Brown stipulated to a trial on the minutes. The court found Brown guilty as charged, sentenced her to 365 days in jail with all but two days suspended, and placed her on probation for two years. At the sentencing hearing, Brown asked that category "B" restitution be waived due to her lack of employment. The district court then orally waived category "B" restitution. However, the court imposed category "B" restitution in its written sentencing order.

Brown appeals.

**II. Standard of Review.**

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017) (citation omitted). "We look to the entire record and make an independent evaluation of the totality of the circumstances." *Id.* (cleaned up). "We give

deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *Id.* (citation omitted).

"When a party asserts that an inconsistency exists between an oral sentence and a written judgment entry, we review the matter for correction of errors at law." *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995).

## III. Discussion.

### A. Motion to Suppress.

The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect against unreasonable searches and seizures. *See State v. Wenzel*, 987 N.W.2d 473, 479 (Iowa Ct. App. 2022). Searches and seizures are unreasonable unless they "take place pursuant to a warrant issued by a judicial officer [or] . . . an exception to the warrant requirement applies." *State v. Perkins*, 2 N.W.3d 889, 892 (Iowa Ct. App. 2023). "One such exception authorizes a law enforcement officer to stop a vehicle when the officer observes a traffic violation, no matter how minor." *Id.* So, while "[t]he detention of an individual during a traffic stop, even if brief and for a limited purpose, is a seizure within the meaning of the Fourth Amendment," it is permissible when an officer has probable cause a traffic violation occurred. *State v. Salcedo*, 935 N.W.2d 572, 577 (Iowa 2019).

Brown does not challenge the initial stop of her van due to her center break light being out. *See State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004) ("When a peace officer observes a violation of our traffic laws, however minor, the officer has probable cause to stop a motorist."). She argues that the trooper unlawfully

extended the duration of the stop by directing her to get in his patrol car and completing the field sobriety testing. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose." *Id.* (cleaned up). Still, once a driver is lawfully stopped, the officer may conduct a reasonable investigation, which "includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." *Salcedo*, 935 N.W.2d at 578 (quoting *State v. Aderholdt*, 545 N.W.2d 559, 563–64 (Iowa 1996)). "In fact, an officer may detain the occupants of a vehicle during a traffic stop while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." *Id.* at 580 (cleaned up). So as to Brown's complaints that the trooper instructed her to sit in his patrol car while he processed the warning for the center break light, he did not violate her constitutional rights. *See id.* at 578.

And an initial investigation "may be expanded to satisfy suspicions of criminal activity unrelated to the traffic infraction based upon responses to reasonable inquiries." *Id.*; *accord State v. Bergmann*, 633 N.W.2d 328, 335 (Iowa 2001) ("If, upon reasonable investigation surrounding the stop, the officer has a

valid suspicion of other wrongdoing not the purpose of the stop, he can broaden the scope of the detention.").  "But the officer must identify 'specific and articulable facts which, taken together with rational inferences from those facts,' amount to reasonable suspicion that further investigation is warranted."  *Salcedo*, 935 N.W.2d at 578 (quoting *United States v. Murillo-Salgado*, 854 F.3d 407, 415 (8th Cir. 2017)).  Brown argues that there was no basis for the trooper to broaden his investigation to include the field sobriety testing, which extended the stop.

The trooper is a "drug recognition expert" who received specialized training "in investigating drug-impaired drivers" by recognizing "the signs and symptoms of drug use versus another substance."  And when he began to talk with Brown he noted her "rapid speech, jerking movements, and [an inability] to just stay still and relax."  From his training and experience, the trooper believed Brown's conduct and demeanor to be consistent with someone using a stimulant drug.  The audio of the initial interaction between the trooper and Brown was picked up on the dashcam footage of the trooper's patrol car, and Brown can be faintly heard starting and stopping her speech abruptly while the trooper asks her to repeat herself.[1]  Once Brown exited her van and got into the patrol car, the audio of conversation between the trooper and Brown is clearer, and Brown can be heard speaking rapidly at various points.  So to the extent that the dashcam captured the interaction, it supports the trooper's observations about Brown.

Brown contends that she informed the trooper that she had a prescription for Vyvanse and her behavior was consistent with someone taking that prescription

---

[1] Given the positioning of the patrol car behind Brown's van, Brown was not visible on the dashcam footage when she was still sitting in her van.

medication. That may be true, but (1) her behavior was also consistent with use of an illegal stimulant and (2) the trooper was not required to attribute her behavior to lawful prescription medication use and set his suspicions aside. Brown also complains that the trooper did not articulate any concerns about her being under the influence until he had already begun the OWI investigation. She is seemingly contending that the trooper did all that was necessary to complete the traffic stop relating to the center brake light, terminating the permissible duration of the initial stop, and then began his OWI investigation after the stop should have terminated. But Brown's argument is rooted in her flawed contention that the trooper did not develop reasonable suspicion she was under the influence while also going through the necessary steps of the initial traffic stop because he did not inform her of his suspicions as they arose. But, as the district court explained, "an officer is not required to contemporaneously announce his every thought to a defendant." It was possible for the trooper to complete the necessary steps for the initial stop while also observing Brown and developing reasonable suspicion she was under the influence.

We agree with the district court that the trooper developed reasonable suspicion that Brown was operating her van while under the influence during the initial traffic stop given his observations of her and he did not illegally extend to stop to administer the field sobriety tests. The district court correctly denied Brown's motion to suppress.

**B. Category "B" Restitution**

The State agrees with Brown that her written sentencing order must be corrected to comport with the district court's oral pronouncement at the sentencing

hearing that Brown does not have the ability to pay category "B" restitution. "[W]here there is a discrepancy between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement of sentence controls." *Hess*, 533 N.W.2d at 528 (quoting *State v. Brydon*, 454 A.2d 1385, 1388 (Me. 1983)). In this instance, "the proper remedy is for the district court to correct the written judgment entry by issuing a nunc pro tunc order" to correct the sentencing order to correctly reflect its determination that Brown does not have the ability to pay category "B" restitution. *See id.* at 527, 529.

**AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**