STATE of Iowa, Appellee,

v.

Mitchell TOMPKINS, Appellant.

No. 92–1090.

Court of Appeals of Iowa.

Sept. 2, 1993.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., William F. Creasey, County Atty., and Christine Dalton, Asst. County Atty., for appellee.

HAYDEN, Judge.

Michael Lee Tompkins appeals his conviction for operating a motor vehicle while intoxicated in violation of Iowa Code section 321J.2 (1991).

On February 5, 1992, police officer Teresa Miller observed Tompkins' car weave in its own lane of traffic. The officer followed Tompkins' car for approximately one mile. During this distance she observed defendant's car weave from the center line to the right side boundary several times. Tomp-kins' car never crossed the center line or the boundary line on the right-hand side. Officer Miller activated her lights and stopped Tompkins. The officer noticed an odor of alcohol coming from the vehicle. After failing field sobriety tests, Tompkins was arrested. Tompkins consented to an intoxilyzer breath test. The result was .185.

Tompkins was charged by information with operating while intoxicated in violation of Iowa Code section 321J.2 (1991). He filed a motion to suppress evidence concerning the implied consent to test procedures and reference to and result of the intoxilyzer breath test. After an evidentiary hearing, the district court overruled the motion.

A bench trial was held in which Tompkins stipulated the intoxilyzer machine used to test his breath was in proper working order and had a five percent margin of error. Officer Miller testified the only reason she stopped Tompkins' car was it was weaving within its lane. She testified she observed Tompkins' vehicle weave within its own lane of traffic.

Q. During that one mile, approximately how many times did the vehicle [of Tompkins'] weave? A. I can't advise an exact number. I think I stated earlier that it was less than six, more than three. I'm not sure exactly how many.

Q. Okay. And did they pass over—the tires pass over the center line? A. No, they did not.

On cross-examination Officer Miller testified:

Q. Your estimate here today is, I believe, three to six. I don't know exactly. More than three, but less than six, I believe is what my notes indicate; is that a correct statement? A. To my recollection. I can't advise what I stated the first time. I know it was enough to get my attention. And when I say at least three, but not more than six, that's probably right around the vicinity as to how many times he hit either the center line or the boundary line.

Q. So the minimum would be three times total of touching either the center line or the boundary line on the right-hand side? A. That's correct.

Q. And I believe you previously indicated that at no time did he ever cross either of those lines? A. That's correct. Tompkins testified he was weaving because he was talking to his girlfriend, a passenger in the vehicle. The district court found Tompkins guilty and sentenced him to pay a $500 fine and serve thirty-five days in jail. The sentence was suspended for a period of one year pursuant to a probation agreement. Tompkins appeals.

██ Our review is for the correction of errors at law. *State v. Murphy,* 451 N.W.2d 154, 155 (Iowa 1990); Iowa R.App.P. 4.

██ The Fourth Amendment requires a police officer must have reasonable cause to stop an individual for investigatory purposes. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). The reasonable cause standard for investigatory stops is set forth in *State v. Lamp,* 322 N.W.2d 48 (Iowa 1982):

> It is well settled that the fourth amendment requires reasonable cause to stop a vehicle for investigatory purposes. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *State v. Cooley,* 229 N.W.2d 755, 750 (Iowa 1975). When a stop is challenged on the basis that reasonable cause did not exist, the State must show that the stopping officer had "specific and articulable cause to support a reasonable belief that criminal activity may have occurred." *State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980). Circumstances giving rise to suspicion or curiosity will not suffice. *State v. Dixon,* 241 N.W.2d 21, 23 (Iowa 1976). The officer is bound by the true reason or reasons for making the stop; that is, the officer may not rely on reasons that he or she could have had but did not actually have. *Aschenbrenner,* 289 N.W.2d at 619. If the State fails to meet its burden, the evidence obtained as a result of the stop must be suppressed. *State v. Reese,* 259 N.W.2d 793, 796 (Iowa 1977).

*Lamp,* 322 N.W.2d at 51. The determination of whether reasonable cause exists must be reached on an objective basis. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628 (1981) (citations

omitted); *Crosser v. Iowa Dep't of Public Safety,* 240 N.W.2d 682, 685 (Iowa 1976).

The issue is whether the police officer's observations of the vehicle weaving within its own lane of traffic gives rise to a reasonable suspicion of criminal activity sufficient to justify an investigatory stop. The following cases illustrate Iowa courts have established in this state weaving from one lane to another justifies an investigatory stop. However, our courts have not addressed the issue of whether an officer may lawfully detain a driver who has been observed to be weaving within its lane of traffic.

In *Shellady v. Sellers* the driver appealed the revocation of his driver's license. *Shellady v. Sellers,* 208 N.W.2d 12, 12 (Iowa 1973). The driver argued the officer lacked reasonable grounds to conduct an investigatory stop. *Id.* The police officer stopped the vehicle after observing it cross the center line three times. *Id.* at 13. The Iowa Supreme Court found the officer's observations gave rise to a reasonable suspicion sufficient to justify the stop. *Id.* at 14. The court affirmed the revocation, stating "[e]rratic driving such as weaving across the center line of the street is sufficient to justify an officer in stopping the vehicle and conducting an investigation." *Id.* (citing *State v. Gustafson,* 258 So.2d 1, 2 (Fla.1972); *State v. Ellanson,* 293 Minn. 490, 490–91, 198 N.W.2d 136, 137 (1972); *Perkins v. Mississippi,* 455 F.2d 7, 9 (5th Cir.1972)).

In *Gehringer v. Department of Transportation* the plaintiff challenged the validity of the investigatory stop and resulting revocation of his driver's license. *Gehringer v. Department of Transp.,* 434 N.W.2d 910, 910 (Iowa App.1988). Evidence showed the driver "was 'weaving back and forth and subsequently moving his vehicle completely to the left or virtually completely to left of center, so that he was actually, in fact using both lanes of what is Main Street in St. Charles.' " *Id.* at 911. This court found there was substantial evidence the officer had a specific and articulable cause to support a belief plaintiff was operating his vehicle while under the influence of alcohol. *Id.*

The facts in *Saunders v. Commissioner of Public Safety* show the officer observed plaintiff's vehicle weaving across the center line of the street. *Saunders v. Commissioner of Public Safety*, 226 N.W.2d 19, 22 (Iowa 1975). The Iowa Supreme Court held the police officer had reasonable grounds to believe the driver was operating the motor vehicle while under the influence of alcoholic beverage. *Id.* at 21. The court found this fact justified the investigatory stop. *Id.* at 22.

Courts in other jurisdictions have held a police officer's observations of a vehicle weaving within its own lane of traffic gives rise to reasonable suspicion justifying a stop of a vehicle for investigation. *Ebona v. Alaska*, 577 P.2d 698, 699 (Alaska 1978) (holding observations of continual weaving of vehicle within its lane, and of driver walking in unsteady manner earlier, justified stop); *State v. Superior Court*, 149 Ariz. 269, 274, 718 P.2d 171, 175 (1986) (holding vehicle weaving within its lane was a specific and articulable fact justifying investigative stop); *State v. Field*, 252 Kan. 657, 663–64, 847 P.2d 1280, 1285 (1993) (holding trial court erred in dismissing complaint against driver; vehicle weaving within its lane over several blocks is sufficient to constitute reasonable suspicion); *State v. Ellanson*, 293 Minn. 490, 490–91, 198 N.W.2d 136, 137 (1972) (holding vehicle weaving within its lane justified stop to investigate cause); *State v. Thomte*, 226 Neb. 659, 663, 413 N.W.2d 916, 919 (1987) (holding vehicle weaving in its lane two times provided articulable basis or reasonable suspicion for stopping a vehicle for investigation of driver's condition); *State v. Dorendorf*, 359 N.W.2d 115, 116–17 (N.D.1984) (holding vehicle weaving within its lane for one-eighth to one-quarter of a mile justified investigatory stop; officer described driving as erratic); *People v. Perez*, 175 Cal.App.3d Supp. 8, 11, 221 Cal.Rptr. 776, 778 (Cal.Super.1985) (holding pronounced weaving of vehicle within its lane for a substantial distance provides officer with reasonable cause to stop vehicle on suspicion of driving under influence); *Brown v. State*, 595 So.2d 270, 270 (Fla.Dist.Ct.App. 1992) (holding continual weaving of vehicle within its lane and slowing to 45 m.p.h. and then accelerating to 55 m.p.h. several times

justified stop; officer described driving as erratic); *People v. Loucks*, 135 Ill.App.3d 530, 533, 90 Ill.Dec. 286, 287, 481 N.E.2d 1086, 1087 (1985) (holding vehicle weaving within its lane continuously for two blocks provided sufficient basis for investigatory stop); *State v. Huckin*, 847 S.W.2d 951, 955 (Mo.Ct.App.1993) (holding vehicle drifting to center line and back toward shoulder four times within own lane gave rise to reasonable suspicion criminal activity was taking place and stop valid; officer described driving as erratic); *State v. Bailey*, 51 Or.App. 173, 175, 624 P.2d 663, 664 (1981) (holding vehicle weaving within its lane for substantial distance creates sufficient reasonable suspicion to justify investigatory stop).

The case of *People v. Perez* is factually similar to the instant case. In *Perez* the police officer's attention was drawn to defendant's vehicle because of its "pronounced weaving" within its own lane of traffic. *People v. Perez*, 175 Cal.App.3d Supp. 8, 8, 221 Cal.Rptr. 776, 776 (1985). The officer observed the vehicle weaving for three-quarters of a mile. *Id.* The officer stopped the vehicle for investigation based on his belief driver was under the influence of alcohol. *Id.* at 8, 221 Cal.Rptr. at 776. The court concluded the officer was justified in stopping the vehicle. *Id.* at 11, 221 Cal.Rptr. at 778. The court held a vehicle weaving for a substantial distance within its own lane provides an officer with reasonable cause to stop the vehicle based on suspicion of driving under the influence. *Id.*

Another factually similar case often cited by other jurisdictions when addressing this issue is *State v. Bailey*, 51 Or.App. 173, 624 P.2d 663 (1981), *rev. denied*, 291 Or. 1, 631 P.2d 340 (1981), *cited in Field*, 847 P.2d at 1284; *Thomte*, 413 N.W.2d at 919; *Dorendorf*, 359 N.W.2d at 116; *Perez*, 175 Cal. App.3d Supp. at 11, 221 Cal.Rptr. at 777. In *Bailey* the police officer observed defendant's vehicle weaving within its own lane for four or five blocks. *Bailey*, 624 P.2d at 664. The officer continued to follow defendant and stopped the vehicle about a quarter mile outside the city limits. *Id.* Defendant moved to suppress all evidence obtained after the traffic stop. *Id.* The appellate court

reversed the district court's granting of defendant's motion. *Id.* The court held the weaving alone gave rise to probable cause sufficient to justify an investigatory stop. *Id.*

We now adopt this majority view. We hold Officer Miller's observations of Tompkins' vehicle weaving within its own lane gave rise to a reasonable cause to believe he was driving under the influence of intoxicants. Officer Miller was justified in stopping the vehicle for investigation. The district court properly denied Tompkins' motion to suppress. We affirm the district court.

AFFIRMED.

All Judges concur except SACKETT and SCHLEGEL, JJ., who dissent.

SACKETT, Judge (dissenting).

I cannot agree with the majority that movement of a vehicle in its own lane of travel never crossing into the other lane of travel provides reasonable cause to stop the vehicle.

What the majority opinion conveys is anything other than driving perfectly straight in one's own lane of traffic justified a stop. Nobody ever drives perfectly straight in his or her own lane of travel.

SCHLEGEL, J., joins this dissent.