Abdoulaye Tangara appeals from judgment and sentence imposed upon his conviction of operating while intoxicated, first offense. He contends the trial court erred in denying his motion to suppress the results of chemical testing because (1) there was not sufficient reason to stop his vehicle in the first instance, and (2) he invoked his right to a phone call under Iowa Code section 804.20 (2007), which was improperly denied. We reverse and remand.
I. Facts Procedural Background.
At about 3:00 a.m. on October 11, 2008, Officer Karla Altenbaumer of the Cedar Falls Police Department observed Tangara's vehicle traveling westbound on University Avenue. Officer Altenbaumer activated the flashing lights on her squad car. Tangara drove for about two blocks before making a right turn and pulling over. The patrol car's video equipment was recording a portion of the officer's pursuit and the stop.
As Officer Altenbaumer spoke with Tangara, she detected the odor of alcohol and observed that his eyes were bloodshot and watery. Tangara agreed to perform an eye test while seated in his vehicle, and based on the results, Officer Altenbaumer requested another unit to come to the scene. Tangara failed three standardized field sobriety tests — the horizontal gaze nystagmus, the walk and turn, and the one-leg stand — and a preliminary breath test (PBT) indicated his blood alcohol concentration exceeded the legal limit of .08. Tangara was placed in Altenbaumer's patrol car and transported to the police station. As they began the trip to the police station, Tangara asked the officer twice whether he could call a friend. The officer responded that "we're kind of past that."
It is apparent from our review of the video recording from the patrol car, that the recording does not confirm the officer's testimony that she followed the Tangara vehicle for two miles or that there was any discernable weaving within or between the lanes of traffic.
At the police station, Officer Altenbaumer invoked implied consent, and Tangara consented to a chemical test. The results of the test indicated his blood alcohol concentration was .184. He was charged with operating while intoxicated (OWI), first offense.
Tangara filed a motion to suppress the results of the chemical test, as well as any statements made following his request to make a telephone call. In support of his motion, Tangara first asserted that the officer did not have probable cause to stop his vehicle. He also argued he was improperly denied a telephone call in violation of Iowa Code section 804.20.
At the suppression hearing, Officer Altenbaumer testified that she followed defendant's vehicle for "approximately two miles or so" and observed the vehicle "weaving in and out of the traffic lanes" "approximately three times." When asked to describe "the weaving," the officer replied: "He hugged the white line on the right side and he crossed the center line between the two lanes that are westbound. So, the two westbound lanes, he was crossing that middle line several times." Officer Altenbaumer testified that after she turned on her traffic lights, the vehicle continued "[a]pproximately two blocks, and then it made a right-hand turn onto Main and then stopped in the middle of the road." The officer was asked, "During the transport from the scene of the stop to the Cedar Falls Police Department, did the defendant ever ask you to make a phone call to anyone?" The officer responded, "No, he did not."
On cross-examination, the officer testified that the onboard video recording captured her observations "thirty seconds prior to the light being activated" and forward. The officer further testified that Tangara's vehicle was traveling in the far right of three westbound lanes and that by weaving, the officer meant "[h]is vehicle was not staying in his lane of traffic." She did not recall Tangara asking to call a friend or her response that "we're past that."
The district court denied the motion to suppress, finding (1) Tangara "operated his motor vehicle in such a manner as to cause the police officer to be concerned about the driver's sobriety" and (2) Tangara's request to call a friend "did not trigger or otherwise implicate the protective provisions" of section 804.20. Tangara thereafter stipulated to a trial on the minutes of testimony.
On April 8, 2009, the district court entered its "Findings of Fact, Conclusions of Law, Decision and Order," finding defendant guilty of OWI "in violation of 321J.2." Tangara now appeals.
II. Section 804.20 Violation.
Iowa Code section 804.20 provides:
 Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be
 permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.
Under that statute, a person arrested for operating while intoxicated has a limited right to consult with a lawyer or family member before deciding whether to submit to a chemical test. State v. Vietor, 261 N.W.2d 828, 832 (Iowa 1978).
The district court concluded that Tangara's requests did not constitute an invocation of his right under Iowa Code section 804.20 to call and consult with an attorney or family member, because he was concerned only with having a friend pick him up or take his vehicle to a nearby parking lot instead of talking to an attorney or family member.
The Iowa Supreme Court's opinions in State v.Moorehead, 699 N.W.2d 667, 671-72 (Iowa 2005), and inState v. Garrity, 765 N.W.2d 592, 596 (Iowa 2009), make it clear that, even when a defendant asks to make a phone call for an unauthorized purpose, the officer has a duty to honor the request to call a family member, Moorehead,699 N.W.2d at 672, or explain the scope of the right afforded by Iowa Code section 804.20. Garrity, 765 N.W.2d at 596-97.[1]
Consequently, in the present case, Tangara's requests to call a friend triggered his right under section 804.20, and the officer should have explained the right and offered him an opportunity to make an authorized phone call. Because she did not do so, the results of Tangara's chemical test were inadmissible.See id. at 597. The State concedes this error, but argues the error was harmless.
III. Reasonable Suspicion.
We must determine whether there was reasonable suspicion to stop Tangara's vehicle and detain him under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. If there was not reasonable cause to stop the vehicle, all evidence flowing from the stop is inadmissible and we would not need to reach the State's argument that the804.20 violation constitutes non-prejudicial error.
Because this question arises from an alleged violation of a constitutional right, our review is de novo. State v.Tague, 676 N.W.2d 197, 201 (Iowa 2004).
On several occasions, our courts have been confronted with the question whether a vehicle weaving within its own lane supports a reasonable suspicion for police to stop the vehicle. InState v. Tompkins, 507 N.W.2d 736, 738 (Iowa Ct. App. 1993), this court addressed the issue "whether an officer may lawfully detain a driver who has been observed to be weaving within its lane of traffic" for the first time. We reviewed case law from other jurisdictions, see id. at 738-39, and adopted the majority view that held that a vehicle weaving within its own lane gave rise to reasonable cause to believe the driver was under the influence of intoxicants. Id.
at 740.
In State v. Otto, 566 N.W.2d 509 (Iowa 1997), the supreme court discussed the Tompkins holding, stating:
 We do not believe Tompkins should be read to hold that observations of a vehicle weaving within one's own lane of traffic will always give rise to reasonable suspicion for police to execute a stop of the vehicle. Rather, the facts and circumstances of each case dictate whether or not probable cause exists to justify stopping a vehicle for investigation.
Otto, 566 N.W.2d at 511. The Otto court concluded that an officer had reasonable suspicion to stop a defendant who was driving forty in a fifty-five mile per hour speed zone, changing her speed erratically, veering left and right at sharp angles, and constantly going back and forth from left to right over a three and a half mile distance.Id. at 510-11.
In Tague, 676 N.W.2d at 205, the court was again confronted with the issue and noted,
 [i]n reviewing the totality of the circumstances objectively, we believe that any vehicle could be subject to an isolated incident of briefly crossing an edge line of a divided roadway without giving rise to the suspicion of intoxication or fatigue.
The Tague court conducted its de novo review of the testimony and the video and concluded that the officer did not have sufficient grounds to stop the defendant's vehicle under the following circumstances:
 Tague's left tires barely crossed the edge line once for a very brief period. The officer did not observe Tague driving erratically or his vehicle weaving on the roadway in the mile he followed the vehicle.
 . . . .
 The officer could not recall whether Tague's vehicle was weaving and testified that Tague was not driving erratically on Cody Road. The officer did not notice Tague nod his head or show any sign of drowsiness. "[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road [was] sufficient [reason] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of [its] privacy."
Id. at 205-06 (citation omitted).
Citing the officer's testimony that the vehicle was weaving in and out of its lane and the lateness of the hour, the State here contends Officer Altenbaumer had reasonable suspicion that the driver was impaired, which supported the stop of Tangara's vehicle. Tangara, however, argues that the officer's testimony was contradictory and refuted by the video recording from the patrol car; thus, the court erred in concluding there was sufficient justification for the stop.
Upon our de novo review of the video recording and the suppression motion testimony, we do not believe the officer had sufficient grounds to stop Tangara's vehicle. The officer testified that she followed the defendant's vehicle for about two miles. Her description of the vehicle's path ranged from "weaving in and out of the traffic lanes" to it "hugged the white line to the right side and crossed the center line" to "not staying in his lane of traffic." However, this behavior is not evidenced on the video recording, which the officer testified captured all observations. Moreover, the officer's ability to recall the events was further placed in question when she did not remember the defendant asking to make a telephone call, though the recording clearly establishes he did ask more than once.
 An objective review of the totality of the circumstances requires us to find the stop did not meet the reasonableness test of article I, section 8
of the Iowa Constitution, which protects the security of one's privacy against arbitrary intrusion by the police.
Tague, 676 N.W.2d at 206.
IV. Conclusion.
The officer did not have reasonable suspicion to stop Tangara's vehicle. This stop violated Tangara's rights as guaranteed by article I, section 8 of the Iowa Constitution. Thus, all evidence flowing from the stop is inadmissible. The district court erred in failing to grant Tangara's motion to suppress. We therefore reverse the district court's suppression ruling, vacate Tangara's conviction and sentence, and remand for further proceedings consistent with our opinion.
REVERSED, CONVICTION AND SENTENCE VACATED, ANDREMANDED.
[1] In Garrity, decided after the hearing on the motion to suppress here, the court nevertheless determined that admission of evidence the defendant refused to submit to a chemical test was harmless error in light of other evidence of intoxication and reversal of his conviction was not necessary.Garrity, 765 N.W.2d at 598.