# IN THE COURT OF APPEALS OF IOWA

No. 14-1734
Filed August 19, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MANDY LYNN LOGE,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joseph M. Moothart, District Associate Judge.

Defendant appeals from the district court's denial of her motion to suppress. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

Les M. Blair III of Blair & Fitzsimmons, Dubuque, for appellant.

Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, Linda Fangman, County Attorney, and Charity Sullivan and Ryan Decker, Assistant County Attorneys, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, C.J.**

Mandy Loge appeals from the district court order denying her motion to suppress. She maintains the officer's observations do not amount to reasonable suspicion to justify the stop. Because we find the officer did not have reasonable suspicion to initiate the stop of Loge's vehicle, we reverse the denial of Loge's motion to suppress and remand for further proceedings.

**I. Background Facts and Proceedings.**

On May 15, 2014, Loge was charged by trial information for driving while barred. The charge stemmed from a stop of Loge's vehicle that occurred on April 19, 2014.

On June 10, 2014, Loge filed a motion to suppress, arguing the officer did not have reasonable suspicion to initiate the stop on the morning in question. A hearing on the motion was held on July 7, 2014.

At the hearing, Officer David Hinz testified that at approximately 1:10 a.m., he observed a Chrysler 300 turn onto the road in front of him that "immediately went to the right-hand side of the lane toward the fog line." The car "went from the fog line then back to the center of the lane" "on several occasions within the first half mile or so . . . ." Although it was "not really a sudden jerking," "it was kind of a fast move." He observed that the car was traveling at only forty-five miles per hour at one point while the speed limit for the portion of road was fifty-five miles per hour. The driver did change lanes twice, but only after signaling and at a time when it was safe to do so. At no other point did the vehicle cross either the center line or the fog line, although Officer Hinz believed it may have touched the fog line once. Officer Hinz testified he believed the driver may have

been impaired and that was why, after observing the vehicle for two and a half or three miles, he initiated the stop.

Following the hearing, the district court denied Loge's motion to suppress. The court held the stop was justified by the officer's "specific and articulable cause to reasonably believe that the defendant was operating while impaired."

Loge waived her right to a jury trial and agreed to a stipulated trial on the minutes of testimony. She was found guilty of driving while barred and sentenced to a term of incarceration of 180 days with all but ten days suspended. Loge appeals.

## II. Standard of Review.

Loge contends her vehicle was stopped in violation of the federal and state constitutions, although she has not proposed a different standard under the search and seizure provisions under the Iowa Constitution. *See State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013) ("Because [the defendant] has not proposed a standard for interpreting our search and seizure provisions under the Iowa Constitution differently from its federal counterpart, we will apply the general standards as outlined by the United States Supreme Court for addressing a search and seizure challenge under the Iowa Constitution."). We review claims regarding constitutional rights de novo. *Id.* We make "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997).

## III. Discussion.

The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable search and seizures.

"[S]topping an automobile and detaining its occupants constitute a 'seizure' . . . even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prous*, 440 U.S. 648, 653 (1979). Stopping a vehicle and detaining the occupant is not an *unreasonable* seizure when the officer has either (1) probable cause due to observation of a traffic violation or (2) reasonable suspicion, supported by articulable facts, that a criminal act has occurred or is occurring. *State v. Tague*, 676 N.W.2d 197, 201–04 (Iowa 2004). If we find the officer had reasonable suspicion to initiate the stop, we will affirm the ruling of the district court.

To determine whether a stop is appropriate based on reasonable suspicion, "a court must engage in a balancing test—balancing the governmental interest advanced by the seizure against the 'intrusion upon the constitutionally protected interests of the private citizen' to be free from unnecessary seizure." *Tyler*, 830 N.W.2d at 297.

In *State v. Tompkins*, 507 N.W.2d 736, 737, 740 (Iowa Ct. App. 1993), our court held that reasonable suspicion supported the stop of a vehicle after the officer observed the driver weaving within his own lane "several times" even though the car never crossed a boundary line. However, in a later ruling, our supreme court expressed its reservations about the wide applicability of the *Tompkins* holding:

> We do not believe *Tompkins* should be read to hold that observation of a vehicle weaving within one's own lane of traffic will always give rise to reasonable suspicion for police to execute a stop of the vehicle. Rather, the facts and circumstances of each case dictate whether or not probable cause exists to justify stopping a vehicle for investigation.

*State v. Otto*, 566 N.W.2d 509, 511 (Iowa 1997).

In *Otto*, the court held an officer did have reasonable suspicion to stop the defendant who was changing speed erratically, weaving "constantly down the road," turning "sharp, like a jerk of the driver," and veering "left and right at a sharp angle." *Id.* at 510.

A review of the video from the officer's car reflects that Loge did not drive in a perfectly straight line within her lane. As Officer Hinz testified, Loge initially turned into the lane toward the right side of the lane. Loge appears to drift within her lane four times during the officer's recording, but this occurred over about a two-and-a-half-mile stretch of road. Two of the instances occurred while Loge was driving on a two-lane highway with traffic driving the opposite direction in the lane to the left. She appeared to move toward the right side of the lane both times another car drove past her going the opposite direction on the left side. A third instance occurred as she drove around a curve. At one point, Officer Hinz can be heard stating that the car is traveling at "about forty-five" miles per hour. At the suppression hearing, Officer Hinz testified that the speed limit for that portion of road was fifty-five miles per hour. Officer Hinz also testified that he considered the time of the observations—approximately 1:10 a.m.

We do not believe these actions give rise to the requisite reasonable suspicion. It is true that "reasonable cause may exist to investigate conduct which is subject to a legitimate explanation and turns out to be wholly lawful." *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002). However, "[i]f failure to follow a perfect vector down the highway or keeping one's eyes on the road was sufficient reason to suspect a person of driving while impaired, a substantial

portion of the public would be subject each day to an invasion of its privacy." *Tague*, 676 N.W.2d at 205-06.

Here, there was no aggravated weaving or quick jerking motions of the vehicle, and Loge only reduced her speed one time. There was no immediate reason for the officer to follow Loge except her travel near the fog line. Rather, Loge simply turned in front of the officer upon the same highway the officer was traversing. Loge's vehicle did drift to the right side of the lane four times, but two of the movements coincided with vehicles approaching in the left lane. She made two proper lane changes—one when the roadway briefly changed to four lanes—and traversed a bridge upon a less than smooth road surface. Upon our review of the dash-cam video, we would agree with the officer that Loge traveled near the fog line and "maybe" touched the fog line once. However, there is no requirement that a driver drive down the center of the roadway. Although Loge did slow drive ten miles per hour below the speed limit at one point and this occurred in the early hours of the morning, we believe the "constitutionally protected interests of the private citizen" outweighs the "governmental interest advanced by the seizure" in this case. *See Tyler*, 830 N.W.2d at 297; *see also State v. Rosensteil,* 473 N.W.2d 59, 62 (Iowa 1991) *reversed on other grounds by State v. Cline*, 617 N.W.2d 277 (Iowa 2000) (stating reasonable suspicion requires more than officers' reliance "just on circumstances which describe a very broad category of predominantly innocent persons"). We find the officer did not have the reasonable suspicion necessary to initiate the traffic stop of Loge's vehicle. Thus, we reverse the denial of Loge's motion to suppress and remand.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**