# IN THE COURT OF APPEALS OF IOWA

———————————————

No. 25-0096
Filed February 25, 2026

———————————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Richard Eugene Noll,**
Defendant–Appellant.

———————————————

Appeal from the Iowa District Court for Muscatine County,
The Honorable Stuart P. Werling, Judge.

———————————————

**REVERSED AND REMANDED**

———————————————

Katherine Sears of Clark and Sears Law, PLLC, Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks,
Assistant Attorney General, attorneys for appellee.

———————————————

Heard at oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J. Dissent by Badding, J.

1

**TABOR. Chief Judge.**

Richard Noll appeals his conviction for possession of a controlled substance, challenging the denial of his motion to suppress evidence seized during a traffic stop. A deputy found the controlled substance—two baggies of methamphetamine—in Noll's pocket during a full-body search.

This appeal is Noll's second time before us. In his first appearance, we partially reversed the district court decision denying his motion to suppress the drugs found during the warrantless search. *State v. Noll*, No. 23-1853, 2024 WL 4370603, at *4 (Iowa Ct. App. Oct. 2, 2024). We remanded for the court to determine "whether the search of Noll's person was lawful as a search incident to arrest." *Id.* On remand, the court again upheld the search, declaring that the "fact that the officer discovered narcotics on Noll's person while searching him is the very reason this exception to the warrant requirement exists."

In this round, Noll disputes that declaration, claiming that a "search cannot generate the probable cause necessary to justify itself." He contends the warrantless search of his pockets "did not follow or accompany an arrest; instead, it produced the basis for the arrest." Noll is correct—"a search is not to be made legal by what it turns up." *United States v. Di Re*, 332 U.S. 581, 595 (1948). Here, the State cannot show that the deputy had probable cause to arrest Noll before finding the methamphetamine. And even if the deputy had probable cause to arrest for another offense, his search of Noll was not *incident* to an arrest based on that probable cause. So the search-incident-to-arrest exception did not apply. Thus, we reverse the district court's denial of Noll's motion to suppress and remand for further proceedings.

## I. Facts and Prior Proceedings

On a late night in May 2022, Deputy Sheriff Jacob Walker saw a pickup truck driving "along the center line" on a two-lane road. The deputy followed the truck, which was traveling about ten miles per hour under the speed limit and weaving within its lane. While trying to check the truck's registration, Deputy Walker noticed the rear license plate was not properly illuminated. It was lit by "an open light bulb which was seated on the bumper in the center of the license plate," obstructing a full view of the plate. Because of the obstruction, the deputy could not read the plate number until the truck slowed down for a turn and he was "nearly on the rear bumper." As the truck was turning left into a driveway, the deputy noticed the truck "drove on the center line for just a couple of seconds." Based on those observations, the deputy initiated a traffic stop.

Deputy Walker approached the driver's side window and told Noll that he had an improperly illuminated license plate and had crossed the center line twice. The deputy testified that Noll "was agitated at first." A body cam video of the stop verifies that view. Noll disputed the deputy's account of his driving, arguing that he didn't cross the center line.[1] Deputy Walker asked Noll for his license, insurance, and registration. While Noll was looking for those items, the deputy noticed an empty beer can. Noll handed it out to the deputy, saying it wasn't his and that it was "old, feel it." Deputy Walker shook the can and handed it back to Noll, who denied drinking.

---

[1] In the district court's first ruling on Noll's motion to suppress, the court found that Noll "may have on a couple of occasions briefly ridden the center line but the Court could not observe from the video, any instance where he crossed the center line into oncoming traffic but for when he makes the left turn into the private drive where he is stopped." The record supports these findings.

After that exchange, Deputy Walker asked Noll if he had "any weed" in the car. When Noll said no, the deputy responded that he smelled it. Upset again, Noll told the deputy, "Bullshit. That's cow shit." He insisted that he did not "even smoke weed." Unconvinced, the deputy called for another officer while he "conducted a driving status check" of Noll.

Returning to the truck, Deputy Walker asked Noll to get out so that he could perform a pat-down search. When the pat-down did not turn up any contraband, the deputy said, "I can smell marijuana, so I'm gonna search the vehicle." Noll continued to insist he didn't smoke marijuana, and Walker again said, "I'm gonna search the vehicle real quick." Noll said, "Go ahead," and waited by Walker's squad car with the other officer while Walker searched the truck.

The deputy found no drugs during that search either, which took just over seven minutes. The deputy again asked Noll if he had anything illegal on him. After Noll said no, Deputy Walker had him place his hands on the hood of the squad car. Noll protested, saying, "You just patted me down." Deputy Walker responded, "I patted you down, yep. I'm gonna search ya." After finding no contraband in the pockets of coveralls that Noll was wearing, the deputy asked Noll to remove the coveralls. The deputy then searched Noll's jeans, where he found the two baggies of methamphetamine.

When finished with the search, Deputy Walker asked Noll to put his hands behind his back. Noll asked why, and the deputy said, "Cuz' you got meth in your pockets." The deputy transported Noll to jail, where Noll performed field sobriety tests and provided a urine sample, which later tested positive for methamphetamine and amphetamine.

The State charged Noll with possession of a controlled substance, third offense, and operating while intoxicated, second offense.[2] He moved to suppress all evidence from the traffic stop, alleging among other things that Deputy Walker "performed an illegal search" of his person without a warrant or probable cause for an arrest. The State resisted, raising the automobile exception to the warrant requirement. After a hearing, the district court denied Noll's motion, finding reasonable grounds for the traffic stop because of the improperly illuminated and obstructed license plate. Noll moved to expand the ruling, arguing the court had failed to address several issues, including the warrantless search of his person. The court's supplemental order denied some of those issues but still did not address the "full-blown search of Noll's person," as Noll pointed out in a second motion to expand. That motion was summarily denied.

Noll waived a jury trial and agreed to a bench trial on the minutes of evidence. The district court found Noll guilty of the possession charge but not guilty of operating while intoxicated. Noll appealed, claiming the court erred in denying his motion to suppress on several grounds. *Noll*, 2024 WL 4370603, at *1. Another panel of this court affirmed the ruling on the validity of the traffic stop, finding it "was supported by not only reasonable suspicion but even probable cause" due to the obstructed license plate. *Id.* at *2. But we reversed and remanded with directions for the court to determine "whether the search of Noll's person was lawful as a search incident to arrest." *Id.* at *4.

---

[2] Noll was also charged with operating without an ignition interlock device and failure to provide insurance. The former charge was dismissed, and Noll pleaded guilty to the latter.

On remand, the district court concluded on the record already made that "the warrantless search of Noll's person was within the limits permitted for a search incident to arrest." The court reasoned:

> Prior to searching Noll's person, the arresting officer had observed him operating a motor vehicle on a public roadway in a rural part of Muscatine County. He had observed an open container of an alcoholic beverage in the pickup's cabin within easy reach of Noll. He observed Noll's erratic behavior suggesting his impairment. Finally, he had detected the smell of marijuana emanating from the truck. Therefore, he had probable cause to search both the truck and Noll's person without a warrant and that search was incident to the arrest. The fact that the officer discovered narcotics on Noll's person while searching him is the very reason this exception to the warrant requirement exists. The officer was searching to find and preserve evidence. The officer's search was limited to the pickup's cabin and Noll's person which is a reasonable exercise of police authority under the circumstances of this roadside investigation.

Noll appeals.

## II.    Scope and Standard of Review

"We review claims challenging the denial of a motion to suppress evidence on constitutional grounds de novo." *State v. Stevens*, 970 N.W.2d 598, 601 (Iowa 2022). "When presented with such claims, we make an independent evaluation of the totality of the circumstances as shown by the entire record. We give deference to the district court's factual findings, but they do not bind us." *Id.* at 602 (cleaned up).

"Of course, under a de novo review we will make our own legal conclusions, as we are not bound by and give no deference to the trial court's conclusions of law." *Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 681 (Iowa 2021) (citation omitted).

## III.    Analysis

"The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures by government officials." [3] *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997). A search or seizure generally requires a warrant issued by a judge or magistrate; without a warrant, searches are per se unreasonable unless a recognized exception applies. *Id.* "One such exception to the warrant requirement is a search conducted incident to a lawful arrest." [4] *Scullark*, 23 N.W.3d at 54.

This exception permits officers, "by virtue of a lawful arrest," to search an "arrestee's person, his pockets, and physical items immediately associated with him." *Id.* at 55. Two historical rationales exist for this exception: "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Knowles v. Iowa*, 525 U.S. 113, 116 (1998). And because those rationales underpin searching incident to arrest, a custodial arrest—not just probable cause to

---

[3] Noll argues the search-incident-to-arrest exception is narrower under the Iowa Constitution than it is under the Fourth Amendment. But our supreme court recently applied federal law to "determine the validity of a search of the arrestee's person" where a challenge was raised under both the state and federal constitutions. *State v. Scullark*, 23 N.W.3d 49, 58 (Iowa 2025). So we take the same approach here.

[4] Noll argues the State "did not preserve reliance on the search-incident-to-arrest exception in the district court" because it raised that exception for the first time in Noll's first appeal. We reject this argument because we directed the district court to consider the exception on remand. "Under the law of the case doctrine, 'the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals.'" *State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012) (citation omitted).

make an arrest—is required to invoke the exception. *Id.* at 115–16 (rejecting Iowa Supreme Court's "reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest"). And that formal arrest is what Noll claims is missing here. Noll asserts he was not under arrest when he was searched, contending this record "leaves no doubt" that he "was searched first, and then arrested only as a result of what that search uncovered."

In its remand ruling, the district court found that Deputy Walker had "probable cause to search both the truck and Noll's person without a warrant and that search was incident to arrest." What the court did not find was that a formal arrest for any offense occurred before the deputy found the drugs. At most, the court mentioned the open container, Noll's erratic driving suggesting his impairment, and the smell of marijuana.

Defending that ruling, the State argues, "The odor of marijuana, taken together with the deputy's earlier observations of Noll's driving, established probable cause to arrest Noll for operating while intoxicated and possession of a controlled substance." As an alternative argument, the State contends there was probable cause to arrest Noll for an open container violation under Iowa Code section 321.284 (2022).

The State reads Noll's challenge to be just about timing. It cites *Stevens* for this proposition: "Even though a search incident to arrest typically occurs after an arrest, the timing of the formal arrest is not fatal to the search." 970 N.W.2d at 604 (cleaned up). We recognize that where a formal arrest follows "quickly on the heels of the challenged search" of the arrestee, it is not "particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). But "*Rawlings* does *not* stand for the broad proposition that probable cause to arrest will always

justify a search incident as long as an arrest follows. Otherwise, *Knowles* would have been decided differently." *People v. Macabeo*, 384 P.3d 1189, 1197 (Cal. 2016).

In our de novo review, we find the State's argument fails for two reasons. First, Deputy Walker did not have probable cause to arrest Noll for (1) operating while intoxicated, (2) possession of marijuana, or (3) an open-container violation. Second, even if probable cause existed, the deputy did not act on his belief that Noll was committing any of those offenses.

We start with the probable cause standard. Probable cause to arrest exists when the facts and circumstances known to law enforcement would warrant a prudent officer to believe that the suspect had committed or was committing an offense. *Stevens*, 970 N.W.2d at 604. This standard "is not subject to a precise definition because whether it exists depends on the specific facts of each case." *Id.* at 605. But, however it's defined, the substance of probable cause "is a reasonable ground for belief of guilt." *Id.* (citations omitted). "In assessing probable cause to make a warrantless arrest, the grounds for the reasonable 'belief of guilt must be particularized with respect to the person to be searched or seized.'" *Id.* (citations omitted). "Due to this particularization requirement, probable cause to search a car does not justify the search of a passenger without something more to create a reasonable belief of wrongdoing specific to the passenger." *Id.*

Under these principles, the State advances the following argument: Deputy Walker had reasonable suspicion to stop Noll for operating while intoxicated "based on his traveling well below the speed limit, crossing the center line, and weaving within his lane at 11:20 p.m."; "[t]hat reasonable suspicion ripened into probable cause when the deputy immediately smelled the odor of marijuana coming from Noll's truck upon making contact"; and

9

the "odor of marijuana, taken together with the deputy's earlier observations of Noll's driving, established probable cause to arrest Noll for operating while intoxicated and possession of a controlled substance." The State also argues the deputy had probable cause to arrest Noll for the open container of alcohol in the front cup holder of his vehicle. After our de novo review, we find these facts were insufficient to warrant an officer of reasonable caution to believe Noll had committed a crime.

There is no dispute that Noll was driving under the speed limit and weaving within his lane, facts that supplied Deputy Walker with reasonable suspicion to initiate a traffic stop. *See State v. Tompkins*, 507 N.W.2d 736, 740 (Iowa Ct. App. 1993). But reasonable suspicion, as the State recognizes, is not enough to justify a warrantless arrest. While the deputy smelled marijuana coming from the truck—and an odor of marijuana may establish probable cause for a search, *State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011)—he did not find any marijuana during his pat-down of Noll or the seven-minute search of the vehicle. *See State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (stating the purpose of an investigatory stop "is to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning"); *see also United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) ("If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity."). And, as Noll points out, the deputy did not testify that he smelled marijuana on Noll. Nor did he report observing any of the typical signs of impairment, like bloodshot eyes, slurred

10

speech, or poor balance. The deputy also did not administer any field sobriety tests until after he arrested Noll and transported him to jail.[5]

Deputy Walker was left with Noll's minor driving infractions, an empty beer can, and Noll's mood swings—going from agitated and argumentative to calm and compliant. Absent more facts, these generalized suspicions did not ripen into probable cause that Noll was operating while intoxicated or in possession of a controlled substance. *See Kreps*, 650 N.W.2d at 641 ("The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." (cleaned up)); *see also State v. Bentley*, No. 00-320, 2000 WL 1677243, at *3 (Iowa Ct. App. Nov. 8, 2000) (finding probable cause to arrest for operating while intoxicated where the officer smelled alcohol and the defendant had watery eyes, failed two field sobriety tests, and admitted drinking).

Likewise, the deputy lacked probable cause to arrest Noll for violating Iowa Code section 321.284 which prohibits drivers from possessing, in the passenger area of their motor vehicle, an open receptacle "containing an alcoholic beverage." The evidence does not support a finding that the empty beer can in Noll's cupholder contained an alcoholic beverage at the time of the traffic stop or any time while Noll was driving.[6] The deputy's body cam

---

[5] The district court also found Noll not guilty of the operating while intoxicated charge.

[6] In considering an officer's qualified immunity, the Eighth Circuit stated, "Minnesota law does not appear to require a container to contain alcohol at the time of arrest, but merely at some point while the vehicle was moving." *Branch v. Gorman*, 742 F.3d 1069, 1073 (8th Cir. 2014). The record does not support a finding of probable cause to believe that the can contained alcohol at some point while Noll was driving. *Cf. Seiser v. City of Chicago*, 762 F.3d 647, 655 (7th Cir. 2014) (noting officers could infer an empty container contained alcohol when witnesses reported seeing Seiser drinking from an

captured Walker asking Noll through the driver's side window: "Is that an open beer there, man?" Noll said it was "old, feel it" and handed the can to Deputy Walker. Noll added: "I don't know . . . who even had that." The deputy passed the can back to Noll, saying "All right." When the deputy later mentioned the open container, Noll insisted that he hadn't been drinking. Indeed, Deputy Walker did not recall that Noll smelled of alcohol and his preliminary breath test showed zeroes. On this minimal record, the empty beer can did not provide probable cause for an arrest. *See United States v. Hoskins*, No. 19-CR-179, 2020 WL 2616079, at *5 (E.D. Wis. May 22, 2020) ("[A]n empty container, standing alone, would not necessarily justify a search."); *see also United States v. Saafir*, 754 F.3d 262, 265-66 (4th Cir. 2014) (holding that discovery of a hip flask in the driver's side door did not create probable cause to search when officer did not confirm there was alcohol in the flask, and no other evidence suggested Saafir was intoxicated).

We turn next to the need for a formal custodial arrest. "For an officer to conduct a search incident to arrest, there must be an *actual arrest.*" *Bennett v. City of Eastpointe*, 410 F.3d 810, 824 (6th Cir. 2005). Even if the deputy had probable cause to arrest for any of the three offenses cited by the State on appeal, that was not enough. "It is irrelevant that, because probable cause existed, there *could* have been an arrest without a search. A search must be incident to an actual arrest, not just to probable cause that might have led to an arrest, but did not." *People v. Reid*, 26 N.E.3d 237, 239 (N.Y. 2014).

After the search, Noll asked why he was being handcuffed. The deputy replied: "Because you have meth in your pocket." As Deputy Walker testified, "Ultimately [Noll] was placed under arrest for the possession of

alcohol container while driving, that he staggered when exiting his vehicle, and that his breath smelled of alcohol).

methamphetamine." As the district court found, "The officer did not inform Noll he was under arrest until after the narcotics were found on his person." If not for finding the methamphetamine, there would have been no arrest. We are persuaded by *Reid*'s analysis.

> If a search could be justified by an arrest that, but for the search, would never have taken place, the Supreme Court would not have decided *Knowles* in the way it did. In *Knowles* as in this case, there was probable cause to make an arrest, and there was a search, followed immediately by an arrest. The problem, in *Knowles* as here, was that the search caused the arrest and not the other way around. In *Knowles*, this fact was proved by the officer's choice, before conducting the search, not to arrest defendant for speeding but to issue him a citation. Here, [the officer] made a similar choice not to arrest defendant for drunken driving, a fact proved by the officer's testimony.

*Reid*, 26 N.E.3d at 240.

The State cites no case law to support the view that "a warrantless search may be justified by a hypothetical arrest that did not in fact occur." *See People v. Cowan*, No. D054635, 2010 WL 2029017, at *8–9 (Cal. Ct. App. May 24, 2010). In fact, the case law goes the opposite way. "[F]or a search to be justified as incidental to a valid arrest, there must have been an intention on the part of the officers to arrest on the information possessed by them prior to the search, without regard to what the search might disclose." *State v. Sims*, 382 A.2d 638, 646 (N.J. 1978); *see also State v. Taylor*, 808 P.2d 324, 325 (Ariz. Ct. App. 1990) ("It would be obviously destructive of the privacy of many if police could justify searches on the basis of charges they never intended to pursue in the hope that the search would turn up something they could pursue."); *State v. Funkhouser*, 782 A.2d 387, 407 (Md. Ct. Spec. App. 2001) ("[I]t is the arrest, not the right to arrest, that justifies a warrantless search incident."). The State cannot justify the deputy's search of Noll based only on the existence of probable cause to make an arrest without an arrest. *See Montgomery v. Cruz*, 162 F.4th 1285, 1289–90 (10th

13

Cir. 2026) (absence of arrest prevented officer from conducting a search as incident to an arrest).

It's true that we don't care what the deputy's actual motivations were for wanting to search Noll. *See Scullark*, 23 N.W.3d at 54. But that is a different question than whether the deputy intended to make an arrest, which would justify searching incident to that arrest. "While the subjective intent of an officer is usually not relevant in Fourth Amendment analysis, statements made by the officer of his intentions along with other objective facts are relevant in the totality of circumstances as to whether an arrest is to occur." *State v. Lee*, 402 P.3d 1095, 1105 (Idaho 2017). "If an arrest does not occur, and objectively the totality of the circumstances show an arrest is not going to occur, an officer cannot justify a warrantless search based on the search incident to arrest exception." *Id.* The logic in *Whren v. United States*, 517 U.S. 806, 813 (1996), that the constitutional reasonableness of traffic stops and arrests do not depend on the true motives of the individual officers involved cannot be extended to this situation. "[T]he 'search incident to arrest' doctrine, by its nature, requires proof that, at the time of the search, an arrest has already occurred or is about to occur. Where no arrest has yet taken place, the officer must have intended to make one" for the exception to apply. *Reid*, 26 N.E.3d at 240.

A useful illustration is the distinction between a suspect and an arrestee. "The Fourth Amendment significance of an arrest, as the trigger for a warrantless search incident, is not the accumulation of data in the mind of an officer; it is the change in the legal status of the person arrested." *Sinclair v. State*, No. 1369, Sept. Term, 2019, 2022 WL 94613, at *8 (Md. Spec. App. Jan. 10, 2022) (quoting *Funkhouser*, 782 A.2d at 407). "[T]he search of [the defendant] cannot be justified as a search incident to arrest where the intent to arrest [him] did not arise until after discovering" the contraband in the search. *Id.*

14

Turning to the evidence, even if a prudent officer, having the information available to Deputy Walker, could have reasonably believed that Noll was operating while intoxicated or possessed marijuana, our view of the totality of the record does not show that Walker was executing an arrest for those offenses when he asked Noll to remove his coveralls to allow for a search of his jeans pockets. If he was making an arrest, he would not have needed to conduct a deeper search of Noll's person, having already conducted a *Terry* pat-down to ensure his safety. Instead, the totality of the circumstances show the officer arrested Noll based on his discovery of the methamphetamine: an arrest incident to search, not the other way around. As for the open container, the deputy did not even mention seeing the empty beer can in his testimony at the suppression hearing.[7]

To sum up, because Deputy Walker did not have probable cause to arrest Noll for (1) possession of a controlled substance, (2) operating while intoxicated or (3) an open-container violation when he searched his person, the arrest was not lawful, and the search-incident-to-arrest exception does not apply.[8] *See Stevens*, 970 N.W.2d at 611 (reversing a suppression ruling where "officers lacked probable cause to arrest [the defendant] before they

---

[7] Nor did he issue a citation for that scheduled offense. And even if the deputy had issued a citation, he could not, in retrospect, have used that finding of probable cause to justify the search. *See Knowles*, 525 U.S. at 117–19 (explaining that danger posed to officer which justifies a search incident to arrest "flows from the fact of the arrest"). Granted, law enforcement may avoid the prohibition of *Knowles* by making a custodial arrest rather than issuing a citation. B. John Burns, Warrantless search and seizure, 4A Ia. Prac., Criminal Procedure § 37:5 (2025 ed.) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354(2001)). But the deputy did not do so here.

[8] Given this conclusion, we need not address Noll's complaint about the legality of Deputy Walker's initial pat-down and whether it impermissibly extended the traffic stop.

searched his person"). And even if the deputy did have probable cause, the record does not show that he had decided to place Noll under arrest when he executed the warrantless search.

The district court erred in denying Noll's motion to suppress evidence seized during this unconstitutional search. We thus reverse the court's suppression order and remand for further proceedings.

**REVERSED AND REMANDED.**

Sandy, J., concurs; Badding, J., dissents.

**BADDING, Judge** (dissenting)

As my colleagues recognize, "[a] lawful arrest is, of course, a predicate for a lawful search incident to the arrest." *State v. Ceron*, 573 N.W.2d 587, 589 (Iowa 1997). Because I would find that Richard Noll's arrest was lawful, I respectfully dissent from the majority's reversal of the district court's suppression ruling.

The State argues that Deputy Jacob Walker had probable cause to arrest Noll for three offenses: operating while intoxicated, possession of a controlled substance, and violating our open container law. Whether the "totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe" Noll committed the first two crimes is a somewhat close question—though I tend to think they would. *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990). But because it's clear Noll committed the third offense, the deputy had "inherent authority" to search Noll's person incident to his arrest. *State v. Scullark*, 23 N.W.3d 49, 56 (Iowa 2025).

Iowa Code section 321.284(1) prohibits a "person operating a motor vehicle upon a public street or highway" from possessing "an open or unsealed bottle, can, jar, or other receptacle containing an alcoholic beverage." Focusing on the last part of the statute—"containing an alcoholic beverage"—Noll argues the deputy did not have probable cause to arrest him because the beer can in the front cup holder of his vehicle was empty. According to Noll, "An empty, dry container by definition cannot presently

17

'contain' an alcoholic beverage and therefore falls outside the statute's scope."[9]

Noll is incorrect. Although the issue does not appear to have been addressed by our appellate courts, other "[c]ourts routinely find probable cause under open container laws when police officers observe empty bottles in vehicles." *Branch v. Gorman*, 742 F.3d 1069, 1073 (8th Cir. 2014); *see also United States v. Hoskins*, No. 19-CR-179, 2020 WL 2616079, at *3–4 (E.D. Wis. May 22, 2020) (collecting cases that have held "even an empty container may supply probable cause" to arrest a defendant for violating an open-container law). Those courts have reasoned that an officer "may reasonably infer from the discovery of a beer or liquor container—even an empty container—in or near an individual's car that the bottle had contained alcohol and had been open while the defendant was driving." *Seiser v. City of Chicago*, 762 F.3d 647, 655 (7th Cir. 2014) (cleaned up); *accord Branch*, 742 F.3d at 1073. The deputy could have reached the same conclusion here, providing him with probable cause to arrest Noll for having an open container in his truck. *See State v. Carter*, 696 N.W.2d 31, 37 (Iowa 2005) (noting that probable cause need not "rise to the level of certainty beyond a reasonable doubt").

Noll dismisses this justification for his arrest, arguing the record shows that he "was arrested for the meth discovered in the search the State now tries to justify as incident to probable cause for some other offense." According to Noll, the State's "revisionist theory contradicts both the facts

---

[9] Noll does not contest the State's assertion that "Iowa law permits an arrest for this offense." *See* Iowa Code § 804.7(1)(a), (b); *see also State v. Orzoco*, 573 N.W.2d 22, 25 (Iowa 1997) (recognizing officers' statutory authority to arrest for scheduled violations).

and the law." Our caselaw, however, allows the State to engage in revisionism.

Because we apply an objective standard in determining whether an exception to the warrant requirement applies, an officer's "subjective motivations for conducting the search are irrelevant." *Scullark*, 23 N.W.3d at 54; *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Thus, "the State is not limited to the reasons stated by the investigating officer in justifying the challenged search or seizure." *State v. Cline*, 617 N.W.2d 277, 281 (Iowa 2000) (overruling *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980), which held that officers may not rely on reasons they could have had for a stop but did not actually have). As a result, the validity of Noll's arrest is not judged by the reason Deputy Walker gave for the arrest but whether he "actually had probable cause for the arrest." *United States v. Lester*, 647 F.2d 869, 973 (8th Cir. 1981) ("The validity of the subsequent search . . . does not turn upon the suitability of the stated grounds for the arrest."); *see also State v. Thornton*, 300 N.W.2d 94, 96 (Iowa 1981) (holding that even though a warrant for the defendant's arrest was invalid, the arrest itself was still valid because the officer had probable cause for the arrest); *Veatch v. City of Waverly*, 858 N.W.2d 1, 8 (Iowa 2015) (stating in a false arrest action the focus of the probable cause inquiry is "on the *facts* known to [the officer], not merely the potential offenses he announced or subjectively considered at the time he made the arrest").

Relying primarily on *People v. Reid*, 26 N.E.3d 237, 239 (N.Y. 2014), the majority departs from this precedent in holding that "[e]ven if the deputy had probable cause to arrest for any of the three offenses cited by the State on appeal, that was not enough." The court in *Reid* was convinced that under

19

*Knowles v. Iowa*, 525 U.S. 113, 119 (1998)—which held that a "search incident to citation" violated the Fourth Amendment—"[w]here no arrest has yet taken place, the officer must have intended to make one if the 'search incident' exception is to be applied." 26 N.E.2d at 240. I disagree.

First, unlike in *Knowles*—where the search occurred after the officer had completed the traffic stop by issuing a citation *in lieu of arrest* under Iowa Code section 805.1—the search in this case occurred before the stop was completed. *See United States v. Diaz*, 854 F.3d, 197, 206 (2d Cir. 2017) (distinguishing *Knowles* for the same reason). Because the stop had not been completed, it remained uncertain "whether the encounter would lead to an arrest; the dangers to the officer that accompany the prospect of arrest therefore remained present." *Id.*; *see also Knowles*, 525 U.S. at 117 (explaining that the "danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty" (citation omitted)).

Second, the court's approach in *Reid* requires a consideration of the officer's intent at the time of arrest, which is "at odds with the Supreme Court's repeated rejection of a subjective approach in the Fourth Amendment context." *Diaz*, 854 F.3d at 207 (cleaned up); *see also Devenpeck v. Alford*, 543 U.S. 146, 154–55 (2004) ("Subjective intent of the arresting officer . . . is simply no basis for invalidating an arrest."). It is also at odds with the principle acknowledged in *Knowles* "that the authority to conduct a full field search as incident to arrest [is] a bright-line rule." *Diaz*, 854 F.3d at 208 (alteration in original) (quoting *Knowles*, 525 U.S. at 118). Such searches "are categorically justified and do not require 'case-by-case adjudication' of their safety and evidentiary bases." *Id.* (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)); *see also Scullark*, 23 N.W.3d at 55 (discussing the "categorical rule" in *Robinson* authorizing searches incident

20

to a lawful arrest).  For these reasons, I would find that Deputy Walker's search of Noll's person was subject to a lawful arrest and that the district court did not err in denying Noll's motion to suppress on that ground.

I would also reject Noll's final argument, which the majority did not reach, that Deputy Walker's initial pat-down was unjustified and unlawfully prolonged the stop.  Under *Terry v. Ohio*, 392 U.S. 1, 27 (1968), "an officer may make a protective, warrantless search of a person when the officer, pointing to specific and articulable facts, reasonably believes under all the circumstances that the suspicious person presents a danger to the officer or to others." *State v. Riley*, 501 N.W.2d 487, 489 (Iowa 1993).  "[A] specific and articulable suspicion does *not* mean that the officer must be 'absolutely certain that the individual is armed.'"  *Id.* (quoting *Terry*, 392 U.S. at 27).  Instead, "the issue is whether a 'reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'"  *Id.* (quoting *Terry*, 392 U.S. at 27).  We evaluate that issue "based on the totality of circumstances confronted by the officer." *State v. Salcedo*, 935 N.W.2d 572, 578 (Iowa 2019); *accord State v. Price-Williams*, 973 N.W.2d 556, 562 (Iowa 2022).

The video of the late-night traffic stop on a driveway in a rural area of Muscatine County shows that Noll was combative, evasive, and unpredictable in his interactions with Deputy Walker.  "[R]oadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Riley*, 501 N.W.2d at 490 (citation omitted).  Once the deputy concluded that further investigation into Noll's impairment was necessary, "he was warranted to assure his protection by ensuring that" Noll was not armed.  *State v. Bergmann*, 633 N.W.2d 328, 333 (Iowa 2001) (stating

21

factors warranting a reasonable suspicion for a pat-down include the defendant's presence in a known drug-dealing area, "flight upon seeing police, nervousness, evasiveness or lying, past experience with the suspect, etc."); *accord Price-Williams*, 973 N.W.2d at 562. Because that pat-down was justified, the deputy did not unlawfully extend the stop beyond what was reasonably necessary to accomplish its mission. *See Salcedo*, 935 N.W.2d at 578 ("Once lawfully stopped, inquiries reasonably related to the mission of addressing the traffic infraction and attending to related safety concerns are permissible." (cleaned up)).

As a result, I would affirm the district court's ruling denying Noll's motion to suppress.